

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-15-00369-CV

CHRISTOPHER HOSKINS                                    APPELLANT

V.

PERRY FUCHS                                            APPELLEE

----------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 153-280594-15

----------

## OPINION

----------

In two issues, Appellant Christopher Hoskins appeals an interlocutory order denying his motion to dismiss under the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.11, 51.014(a)(12) (West 2015). We affirm.

## I. Background

Appellee Perry Fuchs is a tenured professor and Interim Department Chair of Psychology at the University of Texas at Arlington (UTA). Hoskins's girlfriend, Michelle White, was a graduate student at UTA and worked for Fuchs.

In the early morning hours of May 30, 2015, Hoskins and White had an argument during which White told Hoskins that she was having a sexual relationship with Fuchs and boasted that she received preferential treatment from Fuchs because of their relationship. White also told Hoskins, who is a student at the Texas A&M University School of Law, that Fuchs would ruin Hoskins's career if Hoskins told anyone about White and Fuchs's relationship. Hoskins's mother, stepfather, brother, and grandmother overheard the argument.

In July 2015, Hoskins filed a complaint with the Office of Equal Opportunity Services (EOS) at UTA alleging that Fuchs violated UTA Procedure 14-1[1] and UTA Policy 5-511[2] by having a sexual relationship with White, a student and

---

[1]According to Hoskins's complaint, Procedure 14-1 provides, in relevant part, "It is the policy of the University of Texas at Arlington that romantic or sexual relationships between faculty members and advisor and the students they currently teach, supervise[,] or advise and between employees in positions of authority and their subordinates are prohibited."

[2]Policy 5-511 states, in pertinent part,

Consensual relationships in which one party in a position of direct authority or indirect authority over another with whom he or she has a consensual relationship is considered to be a conflict of interest. Therefore, a consensual relationship between an instructor and a student or between a supervisor and a supervisee is prohibited unless the relationship has been disclosed and any conflict mitigated

2

employee over whom Fuchs had direct authority. Hoskins also alleged that people who work closely with and in the same environment as Fuchs and White had approached Hoskins with concerns and rumors regarding their behavior and other behavior going on in psychology offices and labs.

Hoskins further alleged that White had threatened Hoskins that Fuchs would ruin Hoskins's career if he told anyone about the relationship. Hoskins also stated that he had "contacted [his] current school and they are on guard for any possible retaliation against me or any other student. Considering I have already been threatened and [Fuchs's] position, power, and influence, I request further safeguards to prevent any retaliation." In support of his complaint,

_____

as described herein. Where mitigation is not possible[,] a consensual relationship is prohibited.

. . . .

All instructors and supervisors should understand that consensual relationships are of concern to the University and the UT System. It is the instructors and supervisors, who, by virtue of their authority and responsibility, will bear the burden of accountability in such cases. There are substantial risks in an apparently consensual relationship where authority over another exists, even if the conflict of interest issues are mitigated, involving potential charges of sexual harassment and/or violations of University policy. Such consensual relationships have the potential for very serious consequences and should be avoided, where possible.

. . . Any instructor or supervisor who enters into such a relationship should be aware that liability protection under Texas statutes may not apply in subsequent actions arising out of consensual relationship situations, where the instructor or supervisor failed to comply with this Policy, and that failure to comply with this Policy can lead to disciplinary action up to and including dismissal.

3

Hoskins filed affidavits from his four family members who overheard White's statements to Hoskins regarding her relationship with Fuchs.

Fuchs denied the allegations in Hoskins's complaint. As part of its investigation, EOS interviewed White. White denied having any relationship with Fuchs other than student and mentor. White claimed that she and Hoskins had an abusive relationship and that Hoskins often accused her of having a sexual relationship with Fuchs despite her continued denials. White would bring up Fuchs to "get under . . . Hoskins['s] skin" or "because she got tired of saying that there was nothing going on." White also claimed that she had been drinking the night of the argument and that she did not remember what happened that night. White also claimed that Hoskins had continued to harass her after their fight.

After its investigation, EOS issued a final report. In its findings, EOS detailed Fuchs's and White's denials and stated that even though Hoskins alleged in his complaint that people who work closely with and in the same environment as Fuchs and White had approached Hoskins with concerns and rumors regarding their behavior and other behavior going on in psychology offices and labs, Hoskins failed to name anyone who could confirm his allegations. EOS also found that even though Hoskins provided notarized statements from family members who overheard White say that she was in a sexual relationship with Fuchs and threaten that she and Fuchs would ruin Hoskins's career, none of the witnesses were in the room and none of them described what was being said by Hoskins. EOS concluded that there was

4

"insufficient evidence to substantiate a violation of the University's consensual relationship policy" and recommended that no action be taken.

In August 2015, Fuchs sued Hoskins for defamation based upon the statements Hoskins made about Fuchs in the EOS complaint. Hoskins timely filed a motion to dismiss under chapter 27 of the civil practice and remedies code. In addition to asking that Fuchs's lawsuit be dismissed, Hoskins requested sanctions, reasonable attorney's fees, and costs. After a hearing at which both sides presented argument, the trial court signed an order denying Hoskins's motion to dismiss. Hoskins has appealed.

## II. The TCPA

The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding). The legislature enacted the TCPA "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of [persons] to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002. "The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *Lipsky*, 460 S.W.3d at 589 (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.002).

5

When a plaintiff's claim implicates a defendant's exercise of First Amendment rights, chapter 27 allows the defendant to move for dismissal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a); *Andrews Cty. v. Sierra Club*, 463 S.W.3d 867, 867 (Tex. 2015). Under the TCPA's two-step dismissal process, the initial burden is on the defendant to show by a preponderance of the evidence that the plaintiff's claim "is based on, relates to, or is in response to the [defendant's] exercise of" the right of free speech, the right to petition, or the right of association. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). If the defendant satisfies this burden, the burden shifts to the plaintiff to establish "by clear and specific evidence a prima facie[3] case for each essential element of the claim in question." *Id.* § 27.005(c). If the plaintiff meets this burden, the trial court must deny the motion to dismiss even though the plaintiff's claim implicates the defendant's exercise of his First Amendment rights. *See id.*; *Hand v. Hughey*, No. 02-15-00239-CV, 2016 WL 1470188, at *3 (Tex. App.—Fort Worth Apr. 14, 2016, no pet.) (mem. op.).

The clear and specific standard "neither imposes a heightened evidentiary burden nor categorically rejects the use of circumstantial evidence when determining the plaintiff's prima-facie-case burden under the Act." *Andrews Cty.*, 463 S.W.3d at 867; *see Lipsky*, 460 S.W.3d at 591 ("In a defamation case that implicates [chapter 27], pleadings and evidence that establish[ ] the facts of

_____

[3]"Prima facie case" means the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Lipsky*, 460 S.W.3d at 590.

6

when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss."). In determining whether the clear and specific standard has been met, a trial court must consider the pleadings and evidence that explain "the facts on which the liability . . . is based." Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *see United Food & Commercial Workers Int'l Union v. Wal–Mart Stores, Inc.*, 430 S.W.3d 508, 511–12 (Tex. App.—Fort Worth 2014, no pet.).

### III. Discussion

In his first issue, Hoskins argues that the trial court erred by denying his motion to dismiss because (1) he showed by a preponderance of the evidence that Fuchs's claims are based on, relate to, or were filed in response to Hoskins's exercise of his right of free speech, right to petition, and right of association and (2) Fuchs failed to prove each element of his defamation claim by clear and specific evidence. In his second issue, Hoskins contends that we should remand this case to the trial court for an award of court costs, attorney's fees, expenses, and sanctions. *See* Tex. Civ. Prac. & Rem. Code Ann § 27.009(a).[4]

---

[4]If the trial court grants a motion to dismiss under the TCPA, it is required to award the moving party:

> (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and

We review the trial court's ruling de novo. *See United Food & Commercial Workers Int'l Union*, 430 S.W.3d at 511. Because it is dispositive of the appeal, we will first address the second part of Hoskins's first issue—whether Fuchs proved each element of his defamation claim by clear and specific evidence.

## A. Applicable law

Defamation expressed in written or graphic form is libel. Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2011). To prevail on a defamation claim, the plaintiff must prove that the defendant (1) published a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases. *Lipsky*, 460 S.W.3d at 593. A statement is defamatory if the words tend to injure the plaintiff's reputation, exposing him to hatred, contempt, ridicule, or financial injury, or if it tends to impeach the person's honesty, integrity, or virtue. Tex. Civ. Prac. & Rem. Code Ann. § 73.001. Whether a publication is false and defamatory depends upon a reasonable person's perception of the entire publication. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). We construe an alleged defamatory statement "as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *New Times,*

---

(2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a).

8

*Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004) (quoting *Turner*, 38 S.W.3d at 114). To qualify as defamatory, a statement should be derogatory, degrading, somewhat shocking, and contain elements of disgrace. *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 356 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). But a communication that is merely unflattering, abusive, annoying, irksome, or embarrassing, or that only hurts the plaintiff's feelings, is not actionable. *Id.* Moreover, to be actionable, a statement must assert an objectively verifiable fact rather than an opinion. *Bentley v. Bunton*, 94 S.W.3d 561, 580–81 (Tex. 2002). "We classify a statement as fact or opinion based on the statement's verifiability and the entire context in which the statement was made." *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 875 (Tex. App.—Dallas 2014, no pet.).

## B. Evidence of false defamatory statements

Fuchs produced clear and specific evidence to show a prima facie case that Hoskins made false, defamatory statements of fact in his EOS complaint.[5] Specifically, Hoskins stated in the complaint that Fuchs was having a sexual relationship with White and that Fuchs would ruin Hoskins's career if he told

---

[5]Hoskins asserts that his repetition of the statements made in his EOS complaint in this lawsuit is not actionable. *See generally*, *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982) ("Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made."). However, he does not mention judicial-proceedings immunity with regard to his statements in the EOS complaint or explain whether that doctrine could apply as a defense in this case.

anyone about the relationship. Not only do these statements assert objectively verifiable facts, but Fuchs produced evidence that they were false. In support of his response to Hoskins's motion to dismiss, Fuchs attached EOS's final report, which stated, among other things, that both he and White denied having a sexual relationship. Fuchs also attached his affidavit in which he averred that he had never engaged in a sexual relationship with White or any other student and that he had never met, spoken to, or threatened Hoskins in any manner, either directly or indirectly.

When Hoskins's statements in his EOS complaint are construed as a whole and in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive them, they can be reasonably construed as defamatory. *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.001; *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 580 (Tex. App.—Austin 2007, pets. denied) (op. on reh'g) ("Under Texas law, a statement is defamatory if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation."). At the very least, Hoskins's statements tended to injure Fuchs's reputation, had the potential to inflict financial injury on Fuchs, and impeached his integrity and reputation. Accordingly, we conclude that Fuchs presented clear and specific evidence to make a prima facie case that Hoskins's statements were false and defamatory.

## C. Fault

If a plaintiff in a defamation action is a public official or public figure, the plaintiff must show the defendant acted with actual malice regarding the truth of the statement. *Lipsky*, 460 S.W.3d at 593. If the plaintiff is a private figure, he need only show that the defendant was negligent. *Id.*

Hoskins and Fuchs conceded in the trial court and maintain on appeal that Fuchs is a public figure or public official. However, whether a plaintiff is a public official or a public figure is a question of law. *Klentzman v. Brady*, 312 S.W.3d 886, 904 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *Rosenblatt v. Baer*, 383 U.S. 75, 88, 86 S. Ct. 669, 677 (1966)); *HBO v. Harrison*, 983 S.W.2d 31, 36–37 (Tex. App.—Houston [14th Dist.] 1998, no. pet.). Parties may not judicially admit a question of law. *H.E. Butt Grocery Co. v. Pais*, 955 S.W.2d 384, 389 (Tex. App.—San Antonio 1997, no pet.). Nor can they concede a question of law necessary to the proper disposition of an appeal. *Jackson Hotel Corp. v. Wichita Cty. Appraisal Dist.*, 980 S.W.2d 879, 881 n.3 (Tex. App.—Fort Worth 1998, no pet.); *Haas v. Voigt*, 940 S.W.2d 198, 201 n.1 (Tex. App.—San Antonio 1996, writ denied) (citing *White v. Moore*, 760 S.W.2d 242, 243 (Tex. 1988)). Thus, in the course of our de novo review we must determine whether Fuchs was a public figure or public official.

Even though Fuchs is employed by UTA, a public university, not all governmental employees qualify as public officials, and there is no specific test for determining whether an individual is a public official for purposes of a

11

defamation action. *Cloud v. McKinney*, 228 S.W.3d 326, 339 (Tex. App.—Austin 2007, no pet.) (op. on reh'g) (citing *Harrison*, 983 S.W.2d at 36). However, public official status applies to governmental employees "at the very least . . . who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Harrison*, 983 S.W.2d at 36 (quoting *Rosenblatt*, 383 U.S. at 85, 86 S. Ct. at 676). An employee holding an office of "such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees," is a public official for defamation purposes. *Id.* (quoting *Rosenblatt*, 383 U.S. at 86, 86 S. Ct. at 676); *see Cloud*, 228 S.W.3d at 339–40.

For purposes of defamation liability, there are two classes of public figures: (1) general-purpose public figures, who are individuals who "achieve such pervasive fame or notoriety that [they] become[ ] . . . public figure[s] for all purposes and in all contexts"; and (2) limited-purpose public figures, who are persons who "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved . . . invit[ing] attention and comment"; who voluntarily "inject[ ] [themselves] or [are] drawn into a particular public controversy . . . assum[ing] special prominence in the resolution of public questions"; and who "thrust [themselves] into the vortex of [a] public issue . . . [or] engage the public's attention in an attempt to influence its

outcome." *Klentzman*, 312 S.W.3d at 904 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 351, 352, 94 S. Ct. 2997, 3009, 3012, 3013 (1974)).

General purpose public figures have assumed so prominent a role in the affairs of society that they have become celebrities. *See WFAA–TV v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998), *cert. denied*, 526 U.S. 1051 (1999). Absent clear evidence of general fame or notoriety and pervasive involvement in the affairs of society, one should not be characterized as a general purpose public figure. *Gertz*, 418 U.S. at 352, 94 S. Ct. at 3013; *McLemore*, 978 S.W.2d at 571.

To determine whether a person is a limited-purpose public figure, Texas courts apply a three-part test: (1) the controversy at issue must be public both in the sense that people are discussing it and in the sense that people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy. *McLemore*, 978 S.W.2d at 571. To determine if the plaintiff's role in the controversy was more than tangential, a court examines whether the plaintiff (1) actually sought controversy, (2) had access to the media, and (3) voluntarily engaged in activities that necessarily involved the risk of increased exposure and injury to reputation. *Klentzman*, 312 S.W.3d at 905 (citing *McLemore*, 978 S.W.2d at 572–73).

13

Both Hoskins and Fuchs rely on *El Paso Times, Inc. v. Trexler*, 447 S.W.2d 403 (Tex. 1969), in support of their contention that Fuchs is a public official or public figure. In that case, the trial court found as a matter of law that Trexler—a professor at the University of Texas at El Paso who led an anti-Vietnam war demonstration that "aroused a considerable amount of interest and comment in the City of El Paso" and resulted in the El Paso Times publishing several articles, editorials, and letters to the editor responding to Trexler and his views—was a public figure. *Id.* at 404. The issues on appeal, however, were whether the trial court submitted the correct definition of "actual malice" in the jury charge and whether there was evidence to support a jury finding of actual malice under the correct definition, not the trial court's finding that Trexler was a public figure. *Id.* at 404–06. Thus, *Trexler* is not dispositive of the question of whether Fuchs is a public figure.

Moreover, there is no evidence to indicate that Fuchs's actions—unlike Trexler's—generated any "amount of interest and comment" from the public. The evidence in the record only establishes that Fuchs is a tenured professor and the Interim Department Chair of Psychology at UTA. Under the law as set out above, this evidence is insufficient to show that Fuchs is a public official, a public figure, or a limited-purpose public figure. Fuchs is therefore a private figure.

As a private figure, Fuchs was required to prove that Hoskins was at least negligent in making the statements. *See Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 82, 85 (Tex. App.—Houston [1st

14

Dist.] 2013, pet. denied). "Texas courts have defined negligence in the defamation context as the 'failure to investigate the truth or falsity of a statement before publication, and [the] failure to act as a reasonably prudent [person].'" *Id.* at 85 (quoting *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 631 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)). According to Hoskins, White went on a "rant" during their argument and "screamed" that she and Fuchs were having a sexual relationship and that Fuchs would ruin Hoskins's career if Hoskins told anyone. There is no evidence that Hoskins investigated the truth or falsity of these accusations, even though White—who had so much to drink that night that she could not later remember what happened—screamed these statements in the heat of an argument at 2:30 a.m. We therefore conclude that Fuchs presented clear and specific evidence to make a prima facie case that Hoskins was negligent regarding the truth of the statements made in the EOS complaint.[6]

## D. Damages

Finally, when an offending publication qualifies as defamation per se, a plaintiff may recover general damages without proof of any specific loss. *Lipsky*, 460 S.W.3d at 596. This is because defamation per se refers to statements that

---

[6]Hoskins asserts that he was merely repeating White's statements. "Under Texas law, a person who repeats a defamatory statement made initially by another can be held responsible for republishing the libelous statement." *Milo v. Martin*, 311 S.W.3d 210, 214 (Tex. App.—Beaumont 2010, no pet.); *see also Neely v. Wilson*, 418 S.W.3d 52, 61 (Tex. 2013) ("We first observe that it is a well-settled legal principle that one is liable for republishing the defamatory statement of another.").

are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed. *Id.* Defamation is actionable per se if it injures a person in his office, business, profession, or occupation. *Morrill v. Cisek*, 226 S.W.3d 545, 549 (Tex. App.—Houston [1st Dist.] 2006, no pet.). As explained above, Hoskins's statements tended to injure Fuchs's reputation, had the potential to inflict financial injury on Fuchs, and impeached his integrity and reputation. Thus, as defamation per se, damages to Fuchs's reputation are presumed, although the presumption alone will support only an award of nominal damages. *See Lipsky*, 460 S.W.3d at 596.

Accordingly, we hold that Fuchs met his burden to establish by clear and specific evidence a prima facie case for each essential element of his defamation claim.[7] *See* Tex. Civ. Prac. Rem. Code § 27.005(c). Because Fuchs satisfied his burden, we do not address the first part of Hoskins's first issue because even assuming that he established by a preponderance of the evidence that Fuchs's claims are based on, relate to, or were filed in response to Hoskins's exercise of the right of free speech, the right to petition, and the right of association, denial of Hoskins's motion to dismiss was nonetheless required. *See id.*; *see also* Tex. R.

---

[7]Although Fuchs pled defamation and defamation per se as separate claims, they are not separate causes of action. *See Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 650 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("Defamation per se and defamation per quod are not separate causes of action, however. '[T]he distinction between them instead is based on a rule of evidence, the difference between them lying in the proof of the resulting injury.'" (quoting *Downing v. Burns*, 348 S.W.3d 415, 425 (Tex. App.—Houston [14th Dist.] 2011, no pet.))).

App. P. 47.1.  Thus, the trial court did not err by denying Hoskins's motion to dismiss, and we overrule the dispositive portion of Hoskins's first issue.  Because Hoskins's second issue is contingent upon his first issue being sustained, we do not reach his second issue.[8]  *See* Tex. R. App. P. 47.1.

## IV.  Conclusion

Having overruled the dispositive portion of Hoskins's first issue, we affirm the trial court's order denying his motion to dismiss.

---

[8]Hoskins implies in his reply brief that the trial court should have dismissed Fuchs's defamation claim pursuant to section 27.005(d) because even if his statements were defamatory, Hoskins established by a preponderance of the evidence that his statements were true or substantially true when he made them. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d) ("Notwithstanding the provisions of Subsection (c), the court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim."); § 73.005(a) (West Supp. 2016) ("The truth of a statement in the publication on which an action for libel is based is a defense to the action").  In his brief on the merits, Hoskins discusses his belief that his statements were true or substantially true at the time he filed the EOS complaint in the context of whether he acted with actual malice—which, as explained above, is not required to establish a defamation claim involving a private figure—but he does not discuss the applicability of section 27.005(d) until his reply brief.  A reply brief may not be utilized to raise issues not asserted in a party's brief on the merits.  *See* Tex. R. App. P. 38.3; *Rollins v. Denton Cty.*, No. 02-14-00312-CV, 2015 WL 7817357, at *2 n.6 (Tex. App.—Fort Worth Dec. 3, 2015, no pet.) (mem. op.).  Further, Hoskins did not raise this argument in the trial court.  He pled in his answer that he was not liable for defamation because the statements were true and asserted in his motion to dismiss that "truth is an absolute defense to a defamation cause of action," but he did not argue that the suit should be dismissed because he established this defense by a preponderance of the evidence.  *See* Tex. R. App. P. 33.1(a).

                                        /s/ Anne Gardner
                                        ANNE GARDNER
                                        JUSTICE

PANEL:  GARDNER, WALKER, and MEIER, JJ.

WALKER, J., filed a dissenting opinion.

DELIVERED:  December 22, 2016