# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00771-CV

**Texas Jewelers Association, Rex Solomon, and Brad Koen, Appellants**

**v.**

**Ann Glynn, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT**
**NO. D-1-GN-17-005031, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The Texas Jewelers Association (TJA), Rex Solomon, and Brad Koen challenge the trial court's order partially denying their motion to dismiss under the Texas Citizens Participation Act (TCPA). *See generally* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011. Appellants argue that the trial court erred by refusing to dismiss Ann Glynn's claims of defamation and tortious interference with an existing contract. For the reasons that follow, we will affirm in part and reverse and render in part.

## BACKGROUND

The TJA is a statewide professional organization of retail jewelers. At all relevant times, Glynn served as Executive Director of TJA, Koen served as President, and Solomon served

as Secretary/Treasurer. Glynn resigned from her position in October of 2016 amidst allegations that $28,000 was missing from TJA's accounts.[1]

Glynn subsequently filed suit alleging that beginning in March of 2016 Solomon began "building a case against [Glynn] for misuse of TJA funds" in concert with Koen and Jeanne Roberts Roe, another TJA member. Solomon allegedly confronted Glynn during the TJA annual meeting in September while shouting: "I want to know where the $28,000.00 is"; "[t]he tax return does not balance with the bank statement"; and "[w]hat did you do with the money, what did you do with the $28,000.00?" Glynn averred that Richard and Shelly Hirsch and unspecified "convention vendors and security personnel" heard Solomon's statements.

Several days later, Solomon emailed Roe and members of the TJA Board of Directors "selected financial documents and parts of tax returns for TJA" that, Glynn alleges, gave the false impression that funds were missing. Glynn further alleged that Solomon and Koen were acting as TJA's agents.

On October 14, 2016, William R. Ward attended a meeting of the Houston Area Jewelers' Association and overheard a conversation between Solomon and Alan Lodinger, another board member. Ward averred in an affidavit that Solomon told Lodinger that:

> 4. he had positive proof that $28,000.00 was missing from the TJA bank account and that Ann Glynn was to blame. [Solomon] was making reference to what appeared to be bank documents and several other documents that he claimed proved his accusations.

---

[1] We take the following factual allegations from Glynn's live pleading, her affidavit, and the affidavits of William R. Ward and Brian Hoover. Glynn attached all three affidavits to her response to the motion to dismiss.

. . .

> 6. Rex continued to flash documents in front of Alan, claiming they were further proof that something was wrong with the way the executive director was doing her job. Rex said he was "building a case" against Ann Glynn to show the TJA Executive Board in January of 2017. He said he, as treasurer, had spent the last several months compiling records that proved the executive director was guilty of misusing TJA funds.

Ward called Glynn and informed her of the conversation. Brian Hoover, another board member, averred in a separate affidavit that Koen informed him of Solomon's allegations in a phone call. Glynn resigned the same day.

In addition to the allegedly false statements, Glynn alleged that prior to her resignation, Koen had refused to approve a sponsorship deal between TJA and United Precious Metals that would have yielded Glynn lucrative commissions.

The defendants timely filed a motion to dismiss all of Glynn's claims under the TCPA and attached sworn affidavits from Solomon and Lodinger. Glynn filed a response and attached affidavits from herself, Ward, and Hoover. Glynn conceded that the TCPA applied but contended that she had established by clear and specific evidence a prima facie case for each element of her claims. *See id.* § 27.005(c) (providing that the trial court may not grant the motion to dismiss "if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question"). The trial court entered an order granting the motion in part but denying it as to Glynn's defamation claim against TJA, Koen, and Solomon, and her claim

3

of tortious interference with an existing contract against Solomon and Koen. TJA, Solomon, and Koen timely filed notice of appeal.[2]

## TCPA DISMISSAL MECHANISM

To assert a motion to dismiss under the TCPA, a party must show by a preponderance of the evidence that a claim "is based on, relates to, or is in response to the [movant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." *Id.* § 27.005(b); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam). The burden then shifts to the nonmovant to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code § 27.005(c). Even if the nonmovant satisfies the second step, the trial court must dismiss the claim if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id.* § 27.005(d). When deciding whether to dismiss a legal action under the TCPA, the trial court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). We review de novo whether a party carried its assigned burden. *Long Canyon Phase II & III Homeowners Ass'n, v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.).

## ANALYSIS

Appellants contend in their first issue that Glynn failed to establish a prima facie case for each essential element of her remaining claims. Appellants argue in their second issue that they

---

[2] Glynn did not appeal the dismissal of her other causes of action.

4

were entitled to dismissal of the defamation claim even if Glynn established a prima facie case because appellants established the defense of qualified privilege.

**Prima Facie Case**

Glynn's burden "can be restated in terms of three components: (1) with respect to 'each essential element of [each] claim in question,' [she] must have presented (2) a 'prima facie case' (3) 'by clear and specific evidence.'" *Cavin v. Abbott*, 545 S.W.3d 47, 71 (Tex. App.—Austin 2017, no pet.) (quoting Tex. Civ. Prac. & Rem. Code § 27.005(c)). A "prima facie case" refers to "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). Stated differently, it is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding)). "Conclusory statements and bare, baseless opinions are not probative and accordingly do not establish a prima facie case."[3] *Cashion*, 517 S.W.3d at 222 (internal footnote omitted).

On the other hand, "clear and specific" refers to the quality of evidence needed to make a prima facie case. *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.). "The words 'clear' and 'specific' in the context of this statute have been interpreted respectively to mean, for the former, 'unambiguous,' 'sure,' or 'free from doubt' and, for the latter, 'explicit' or 'relating to a particular named thing.'" *Hawxhurst v. Austin's Boat Tours*, 550 S.W.3d 220, 230

---

[3] A conclusory statement expresses "a factual inference without stating the underlying facts on which the inference is based." *Long Canyon Phase II & III Homeowners Ass'n, v. Cashion*, 517 S.W.3d 212, 222 n.44 (Tex. App.—Austin 2017, no pet.).

(Tex. App.—Austin 2018, no pet.) (quoting *In re Lipsky*, 460 S.W.3d at 590). Collectively, these elements require that the "plaintiff must provide enough detail to show the factual basis for its claim." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam).

### *Tortious Interference*

The elements of tortious interference with an existing contract are (1) a valid contract exists that is subject to interference, (2) the defendant willfully and intentionally interfered with the contract, (3) the interference proximately caused injury to the plaintiff, and (4) the plaintiff incurred actual damage or loss. *Community Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). "The first element requires the existence of a valid contract." *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 664 (Tex. 1990), *superseded on other grounds by statute as stated in Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Formation of a contract requires, among other things, an offer, an acceptance in strict compliance with the offer, and a meeting of the minds on the essential terms of the contract. *See, e.g.*, *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

Glynn argues in her brief to this Court that paragraph 12 of her affidavit establishes the existence of a contract.[4] That paragraph states:

---

[4] Glynn did not mention this claim in her response in the proceeding below and did not address it in her live pleading save for a general assertion that "Solomon and Koen interfered with the contract that Glynn had with TJA." Glynn repeats the same assertion in her appellate briefing but does not set out the details of her employment contract or give any indication of how Solomon and Koen's actions induced TJA to breach it. *See Serafine v. Blunt*, 466 S.W.3d 352, 362-63 (Tex. App.—Austin 2015, no pet.) (observing that plaintiffs "were required to provide clear and specific evidence that some obligatory provision of the contract was breached" to maintain their claim of tortious interference with an existing contract). We conclude that Glynn's evidence is not clear and

On several occasions between September 26, 2016 and October 6, 2016, I spoke with Brad Koen about a business opportunity presented to TJA and myself from Dave Siminski of United Precious Metals. Siminski offered me an agreement to increase advertising and sponsorship with TJA if TJA members would use United Precious Metals as a precious metal refiner. With each additional TJA member as a customer, Siminski would increase his advertising and sponsorship. During those dates and those conversations, Koen flatly refused to even consider the opportunity and repeatedly stated "that is never going to happen." Such an arrangement would be beneficial to TJA and would earn commissions for me.

Glynn expressly states that Koen, who was President of TJA, refused to accept Siminski's offer. Glynn presented no evidence—much less clear and specific evidence—of the existence of a contract subject to interference. *See Better Bus. Bureau of Metro. Dall., Inc. v. BH DFW, INC.*, 402 S.W.3d 299, 310-11 (Tex. App.—Dallas 2013, pet. denied) (concluding that nonmovant did not establish contract element of tortious-interference claim because there was no offer and acceptance); *see also Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 588 (Tex. App.—Austin 2007, pet. denied) ("A cause of action for tortious interference will not lie in the absence of a contract.").[5] Consequently, the trial court erred in failing to dismiss this claim.

### *Defamation*

The elements of defamation include (1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the

---

specific enough to establish a prima facie case for tortious interference with her employment contract. *See id.*

[5] We note that Glynn asserted a claim for tortious interference with prospective contracts but she does not appeal the trial court's dismissal of that claim.

statement; and (4) damages, unless the statement is defamatory per se. *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017).

Appellants assert in their brief to this Court that Glynn failed to establish a prima facie case "of all elements" of her defamation claim but they actually address only publication.[6] Specifically, appellants contend that Glynn's affidavit is insufficient without third-party confirmation of Solomon's statements, such as affidavits from Richard and Shelly Hirsch or copies of Solomon's emails. The TCPA expressly directs the trial court to consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a). "[T]he TCPA contemplates primary reliance on such proof." *Reeves v. Harbor Am. Cent., Inc.*, 552 S.W.3d 389, 393 (Tex. App.—Houston [14th Dist.] 2018, no pet.). There is no requirement that the nonmovant "present testimony or other evidence to satisfy [its] evidentiary burden." *In re Elliott*, 504 S.W.3d 455, 462 (Tex. App.—Austin 2016, orig. proceeding). We conclude that Glynn's pleadings and sworn affidavit describing her confrontation with Solomon and his emails to the board members constitute prima facie proof that Solomon published the statements. However, we cannot say the same about Koen. Glynn asserted a defamation claim against Koen and Glynn but attributes the defamatory statements to Solomon. Absent an allegation

---

[6] The first element of defamation is that the defendant published a "false" statement. *See, e.g.*, *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). Solomon argued in her response to the court below that she is entitled to a presumption of falsity because she is a private plaintiff suing a nonmedia defendant. This Court recently concluded in similar circumstances that a private plaintiff's prima facie burden does not include providing evidence the statements were false because "falsity is presumed." *Camp v. Patterson*, No. 03-16-00733-CV, 2017 WL 3378904, at *7 (Tex. App.—Austin Aug. 3, 2017, no pet.) (mem. op.) (citing *Cummins v. Bat World Sanctuary*, No. 02-12-00285-CV, 2015 WL 1641144, at *10 (Tex. App.—Fort Worth Apr. 9, 2015, pet. denied) (mem. op.)). We apply the same holding here.

and proof that Koen published a defamatory statement, we conclude that Glynn failed to establish a prima facie case of defamation against Koen.

Assuming that appellants' general assertion that Glynn's evidence falls short of establishing a prima facie case preserves a challenge to the remaining elements of defamation, we will briefly address them. As a private citizen suing a nonmedia defendant, Glynn had the burden to prove that Solomon was at least negligent. *In re Lipsky*, 460 S.W.3d at 596; *Hancock v. Variyam*, 400 S.W.3d 59, 65 n.7 (Tex. 2013). "Texas courts have defined negligence in the defamation context as the 'failure to investigate the truth or falsity of a statement before publication, and [the] failure to act as a reasonably prudent [person].'" *Fawcett v. Rogers*, 492 S.W.3d 18, 27 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (alterations in original) (quoting *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 85 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)); *see Hoskins v. Fuchs*, 517 S.W.3d 834, 843 (Tex. App.—Fort Worth 2016, pet. denied). Glynn alleged in her live petition that "there was information available to Solomon" that would have "raised serious doubts about the truth of the statements being communicated and published by Solomon to virtually every member of the TJA board." She explained in her affidavit:

> The TJA fiscal year runs from September 1 to August 31. The bank statement balance that should be examined to support the 2014 TJA tax return would be the bank statement balance that ended August 31, 2015. Solomon was feeding Board Members and Lucinda Rogers misleading information and asking them to conclude that I had stolen $28,000.00.

Glynn's sworn statement that Solomon failed to use TJA's August 2015 bank statement when reconciling the tax return amounts to clear and specific evidence that he failed to investigate. *See*

9

*Fawcett*, 492 S.W.3d at 27 (holding that plaintiff's affidavit asserting that defendants were aware that an audit was ongoing when they accused him of stealing funds established a prima facie case of negligence).

Glynn asserted in her response that Solomon's accusations were defamatory per se because he accused her of stealing or misappropriating funds. "Defamation per se occurs when a statement is so obviously detrimental to one's good name that a jury may presume general damages, such as for loss of reputation or for mental anguish." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018). We agree that Solomon's statements are properly classified as defamation per se because Solomon accused her of theft or misappropriation of funds.[7] *See, e.g.*, *Fawcett*, 492 S.W.3d at 26; *Morrill v. Cisek*, 226 S.W.3d 545, 550 (Tex. App.—Houston [1st Dist.] 2006, no pet.). As a result, Glynn was not required to provide prima facie proof of damages.

We conclude that Glynn carried her burden to establish a prima facie case of defamation against Solomon but not against Koen. We overrule appellants' first issue as it pertains to Glynn's defamation claim against Solomon and sustain it as to Koen.

---

[7] We note that Solomon denied in his affidavit that he made the statements attributed to him. He contends that he merely informed Glynn of "questions regarding the reconciliation of [TJA's] most recent tax return with the final financial statement." He admits to emailing the board members after reviewing TJA's financial information but asserts that he stressed in the emails that his findings (presumably, that $28,000 was missing) "were incomplete and had not been reviewed for complete and total accuracy." He also denies that he told Lodinger he possessed "proof positive" of Glynn's theft. Lodinger echoed that assertion in his own affidavit. Both affidavits raise factual discrepancies but neither conclusively proves the nature of Solomon's statements. *See Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 801 (Tex. App.—Austin 2017, pet. filed). ("If a plaintiff provides evidence that establishes a prima facie case if left uncontradicted and unexplained, the prima facie case only disappears when the true facts are conclusively shown by other evidence.").

**Qualified Privilege**

Appellants argue in their second issue that they are entitled to dismissal because they established the defense of qualified privilege. Even if the nonmovant carries her burden to establish a prima facie case, the TCPA directs the trial court to dismiss if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Tex. Civ. Prac. & Rem. Code § 27.005(d); *Coleman*, 512 S.W.3d at 899.

A qualified privilege attaches to a communication that is "made in good faith and the author, the recipient or a third person, or one of their family members, has an interest that is sufficiently affected by the communication." *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014) (quoting *Cain v. Hearst Corp.*, 878 S.W.2d 577, 582 (Tex. 1994)). Outside of the TCPA context, qualified privilege is an affirmative defense that the defendant has the burden to prove unless the plaintiff's petition affirmatively establishes that the privilege attaches. *Id.* If the defendant establishes that the privilege attaches, then "the burden shifts to the plaintiff to prove that the defendant made the statements with actual malice." *Id.* (citing *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 898 (Tex. 1970)). Here, both parties assume that raising qualified privilege as a defense under section 27.005(d) places the burden on the movant to demonstrate lack of malice in a way analogous to a defendant moving for summary judgment. *See, e.g.*, *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) (observing that to be entitled to summary judgment on qualified privilege, a defendant "must conclusively establish that the allegedly defamatory statement was made with an absence of malice"). Neither party contests this approach, so we will address the case as the parties litigated it in the court below. *Cf. Alamo Heights Indep. Sch. Dist.*

*v. Clark*, 544 S.W.3d 755, 783 (Tex. 2018) (applying causation standard advocated by both parties without deciding whether standard was correct).[8]

Actual malice in the defamation context is a term of art. *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 420 (Tex. 2000). Unlike common-law malice, it does not refer to spite or ill-will but that the defendant "made the statement 'with knowledge that it was false or with reckless disregard of whether it was true or not.'" *Id.* (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964)). "Reckless disregard" is a subjective standard that requires evidence that the defendant "entertained serious doubts as to the truth" of the statement. *Id.* (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). Appellants contend that Solomon's affidavit establishes that he spoke without actual malice because he had a reasonable basis for his statements: he reviewed all of the TJA financial records available to him and spoke with the accountants responsible for preparing TJA's two most recent tax returns. Glynn's competing affidavit alleges that he failed to review an available financial record, the August 2015 bank statement, and called her and her husband "con artists." On the record before us, and at this procedural stage of the proceedings, we cannot conclude that appellants established by a preponderance of the evidence that Solomon acted without malice. We overrule appellants' second issue.

---

[8] We stress that we take no position on whether qualified privilege qualifies as a defense under section 27.005(d).

12

## CONCLUSION

We reverse the trial court's order to the extent that it denied appellants' motion to dismiss Glynn's defamation claim as to Koen and her tortious-interference claim as to all three appellants, and render judgment dismissing those claims. We otherwise affirm the trial court's order.

_____

Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Puryear and Bourland

Affirmed in Part; Reversed and Rendered in Part

Filed:   October 26, 2018

13