

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00395-CV

_____

MICHAEL MAGGRET AND TIFFANY MAGGRET, Appellants

V.

RAMSEY'S RODS AND RESTORATION, Appellee

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-318628-20

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Michael and Tiffany Maggret appeal the denial of their motion to dismiss a set of defamation and business disparagement claims under the Texas Citizens Participation Act (TCPA). We reverse and remand.

## I. BACKGROUND

In September 2019, the Maggrets hired appellee Ramsey's Rods and Restoration to rebuild a vintage truck. After the Maggrets explained that they had a limited budget of $30,000, Ramsey's set to work.

The first month of the project proceeded smoothly. The Maggrets would order parts and deliver them to the shop, and Ramsey's would perform restorative work and then email the Maggrets detailed progress reports. The Maggrets—and Tiffany in particular—followed the project with avid interest. Via email, Tiffany requested updates and invoices multiple times, and when those were received, she requested clarification.

The project was running well over budget by October, though, even with the Maggrets forgoing nonessential repairs. The parties began to dispute what the Maggrets felt were excessive expenses, which brought the project to a halt. A trail of emails suggests that the parties eventually resolved their dispute and agreed on a plan, two aspects of which were that Ramsey's would limit the repairs to only the items necessary to make the truck drivable and that, every two weeks, Ramsey's would send the

Maggrets an invoice showing how their funds were being spent. The Maggrets resumed making payments in late December, and Ramsey's restarted work on the truck.

However, by February 2020, no invoices were forthcoming. Tiffany requested an invoice multiple times over the next three months, but her requests went unheeded. Finally, Ramsey's sent an invoice in May. Alarmed by the steep figures in the invoice, the Maggrets instructed Ramsey's to stop work, and Tiffany came to collect the truck.

The Maggrets noticed flaws in the truck's paint job. The parties disagreed over what caused the flaws—namely, whether it was Ramsey's substandard work or the Maggrets' choice of a lower quality paint job due to budgetary concerns and their hasty removal of the truck from the garage.

Regardless, after the project went south, Tiffany posted multiple negative reviews about Ramsey's on Yelp[1] and Google in June and July. The reviews critiqued the quality of Ramsey's work on the paint job and its customer care.

Based on the reviews, Ramsey's sued for defamation and business disparagement. The Maggrets filed a TCPA motion to dismiss, which the trial court denied in November 2020. The Maggrets appeal.

## II. DISCUSSION

For expedience, we begin with the Maggrets' third issue, in which they contend that Ramsey's failed to carry its burden to offer clear and specific evidence of the fault

---

[1] "Yelp is a website which allows individuals to post reviews of businesses." *Elias v. Pilo*, 781 F. App'x 336, 337 n.1 (5th Cir. 2019) (per curiam).

3

and damage elements of its defamation and business disparagement claims. The Maggrets insist that because there is no evidence that Tiffany was careless about the truth when she maligned Ramsey's and its work, the TCPA motion should have been granted.

The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding). The legislature enacted the TCPA "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002.

The TCPA employs a three-step process to determine whether a claim is subject to dismissal. First, under the amended version of the statute, the party invoking the TCPA must "demonstrate[]" that a legal action has been brought against it that is "based on or is in response to" (1) the party's exercise of the rights of free speech, petition, or association protected by the TCPA or (2) "the act of a party described by Section 27.010(b)." *Id.* § 27.005(b). Second, if the moving party meets its initial burden, then the onus falls on the nonmoving party to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. *Id.* § 27.005(c). Third, if the nonmoving party satisfies that requirement, the burden finally shifts back to the

4

moving party to "establish[] an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d).

In determining whether a legal action is subject to or should be dismissed under the TCPA, the court shall consider the pleadings, the evidence a court could consider under Rule 166a, and any supporting and opposing affidavits. *Id.* § 27.006(a). We review a trial court's denial of a TCPA motion to dismiss de novo. *Miller v. Watkins*, No. 02-20-00165-CV, 2021 WL 924843, at *8 (Tex. App.—Fort Worth Mar. 11, 2021, no pet.) (mem. op.). We view the pleadings and evidence in the light most favorable to the nonmovant. *Id.*

The first step is to determine the applicability of the TCPA. The Maggrets will have established their initial burden if they show that Ramsey's suit is based on an act described in Section 27.010(b), which includes communicating or posting consumer opinions or ratings and reviews of businesses. Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b)(2).

We conclude that the Maggrets have satisfied this burden. As Ramsey's petition described the basis of its suit, "Defendants have posted the defamatory statements online and in social media sources." The Maggrets submitted the full text of the statements in question, which were negative reviews of Ramsey's business that Tiffany posted to Yelp and Google. In her first post, Tiffany complained about the quality of Ramsey's paint job and customer care, urged readers dealing with Ramsey's to "[g]et

EVERYTHING in writing," and accompanied her review with a one-star rating.[2]  In her next post, Tiffany updated her previous review:  "we received a threat of lawsuit if we did not remove our reviews, picture of letter attached."  And in her final post, she reaffirmed the sentiment she posted in her initial review, stating that the "truck has now been inspected by 4 specialist[s] and our attorney.  All with the same conclusion the paint job was done incorrectly and of poor quality.  We can provide all documents and reports.  Pictures of more findings attached[.]"  In each of these statements, a consumer critically evaluated her experience with a business and assessed the faults in its services.  These statements represent acts—posting consumer opinions or reviews of a business—that are protected by Section 27.010(b).  Because Ramsey's suit is based on those acts, we conclude that the Maggrets have satisfied their initial burden under the TCPA.

The burden therefore shifted to Ramsey's to establish by clear and specific evidence a prima facie case for each essential element of its claims for defamation and

_____

[2]The full text of her first post reads as follows:

> We had a very bad experience especially in the quality of the paint job and communication.  We will be more than happy to share our information with anyone wanting more information and the over 200 emails and pictures we have in communication.  Please, please do your research and specifically read reviews, As we are learning many customers after October 2019 during the same time our vehicle was had very similar experiences as we did.  Get EVERYTHING in writing if you do choose them to do business with them.  pay attention and notice if they don't sign something!

6

business disparagement. *Id.* § 27.005(c). For the reasons that follow, we conclude that Ramsey's has offered insufficient evidence to satisfy that burden with respect to the fault elements of both claims. The circumstances here demanded clear and specific evidence that Tiffany Maggret was negligent, for the defamation claim, and acted with actual malice, for the business disparagement claim.[3] Ramsey's provided none. The TCPA motion thus should have been granted.

The TCPA's undefined terms "clear" and "specific" have been interpreted according to their plain meaning as, for the former, "'unambiguous,' 'sure,' or 'free from doubt'" and, for the latter, "'explicit' or 'relating to a particular named thing.'" *Lipsky*, 460 S.W.3d at 590. "Prima facie case" refers to the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.*

"The torts of defamation and business disparagement are alike in that 'both involve harm from the publication of false information.'" *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020) (quoting *Lipsky*, 460 S.W.3d at 591). "But there are important differences between the two . . . ." *Id.* For one, business disparagement's "elements are more stringent than those of defamation." *Id.* The elements of defamation include: (1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual, whereas a public figure

---

[3]There is no evidence that Michael posted anything concerning Ramsey's online.

7

or official must prove actual malice); and (4) damages (unless the statement constitutes defamation per se). *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *Lipsky*, 460 S.W.3d at 592. Thus, while the mental state for defamation may range as low as negligence, the baseline mental state for business disparagement is the higher state of actual malice.

It is undisputed that Ramsey's is a private party rather than a public figure or official, and therefore the Maggrets must be held to the negligence standard of fault for defamation purposes. *See Greer v. Abraham*, 489 S.W.3d 440, 443 (Tex. 2016) (deciding a TCPA case based on the defamation plaintiff's undisputed status as a public official). It is also axiomatic that if the nonmoving party cannot establish defamatory negligence, it cannot establish the higher mental state of actual malice with respect to the same statements for a business disparagement claim. *See Holden v. Clary*, No. CIV. A. 92-313, 1992 WL 373145, at *4 (E.D. Va. Sept. 17, 1992) (mem. op.) ("Since the plaintiff cannot establish negligence on the part of the defendant, it certainly cannot prove that it acted with actual malice."); *cf. Sanders v. Herold*, 217 S.W.3d 11, 20 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We therefore focus on whether Ramsey's has offered any evidence of negligence.

8

A defendant is negligent if it "knew or should have known a defamatory statement was false," unless the content of the false statement would not warn a reasonably prudent person of its defamatory potential. *D Magazine*, 529 S.W.3d at 440. In the defamation setting, negligence is typified by the "failure to investigate the truth or falsity of a statement before publication, and the failure to act as a reasonably prudent person." *Hoskins v. Fuchs*, 517 S.W.3d 834, 843 (Tex. App.—Fort Worth 2016, pet. denied) (cleaned up). By contrast, actual malice means knowledge of, or reckless disregard for, the falsity of a statement; mere negligence is not enough. *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002). "[I]nherently improbable assertions and statements made on information that is obviously dubious may show actual malice," and that which is probative of actual malice tends to show the lesser state of negligence as well. *See id.* at 596.

As Ramsey's sole evidence with respect to negligence, it points to a lengthy series of emails between the Maggrets and Ramsey's owners and employees. According to Ramsey's, the email exchange shows that, contrary to Tiffany's review, Ramsey's performed quality work and handled the Maggrets' concerns with care. Thus, by Ramsey's account, the emails prove that Tiffany knew that her reviews were false and that she was baselessly disparaging Ramsey's work and customer service.

But falsity is not a silver bullet for fault. *See ADB Interest, LLC v. Wallace*, 606 S.W.3d 413, 431 (Tex. App.—Houston [1st Dist.] 2020, pet. filed) ("Evidence that the statement is false is not enough."). Indeed, some errancy must be tolerated—and the

9

speaker held blameless—in the name of free speech; "erroneous statement is inevitable in free debate, and it must be protected if the freedoms of expression are to have the breathing space that they need to survive." *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 716 n.29 (Tex. 2016) (cleaned up) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 271–72, 84 S. Ct. 710, 721 (1964)). "[T]o insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones." *Bentley*, 94 S.W.3d at 596 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S. Ct. 1323, 1326 (1968)). It is only when falsity intersects with fault that liability may adhere.

Moreover, to whatever extent that patent falsity may be probative of fault, the emails do not show that Tiffany's statements about the quality of Ramsey's painting and communication were false in the first place. The emails say nothing about the quality of the paint job, and they show that there were indeed significant communication problems, especially toward the end of the parties' relationship. For instance, the Maggrets were surprised to learn in October 2019 that the past and future scope of the project had gone well over the parties' agreed budget, and when the Maggrets voiced their concerns, Ramsey's promised to deliver "interim invoices" every two weeks detailing the cost of the work that was being performed. Throughout early 2020, the Maggrets requested an interim invoice seven times in four months, and at one point, Ramsey's claimed that it had already emailed one to Tiffany; however, none had in fact been provided. When Ramsey's did at last deliver an invoice in May 2020 that

10

showed worrisome budget numbers, the Maggrets instructed Ramsey's to stop work on the truck. Thus, the emails are hardly the potent evidence of falsity that Ramsey's hopes for, and to a degree, the content of the emails tends to show the truth of Tiffany's statement about communication problems. *See, e.g.*, *Infowars, LLC v. Fontaine*, No. 03-18-00614-CV, 2019 WL 5444400, at *5 (Tex. App.—Austin Oct. 24, 2019, pet. denied) (mem. op.) (explaining why defamation defendant's evidence regarding negligence did not assist the party's TCPA burden).

Moreover, rather than showing that Tiffany was careless or failed to investigate the basis of her statements, other aspects of the emails suggest that the Maggrets devotedly concerned themselves with the details of the project from beginning to end. Over the course of dozens of emails, they demanded progress reports and periodic invoices for all work performed. When there were discrepancies in those reports and invoices, the Maggrets did not hesitate to inquire. Many emails commemorated the Maggrets' calls and visits to the shop. Indeed, the Maggrets' avidness for overseeing the restoration project appears to have been partially to blame for the breakdown in their relationship with Ramsey's. In short, Ramsey's own evidence shows that the Maggrets were anything but lax in their hunt for information about the project's quality, cost, and details. *Cf. Tex. Jewelers Ass'n v. Glynn*, No. 03-17-00771-CV, 2018 WL 5305721, at *4–5 (Tex. App.—Austin Oct. 26, 2018, no pet.) (mem. op.) (holding that declarant's failure to consult pertinent sources of information supported a negligence finding).

That trend of attentiveness continued even after the parties dissolved their relationship. In her affidavit, Tiffany testified that before she posted her reviews, she hired a technical consultant from the paint's manufacturer who confirmed that the paint job was handled incorrectly. According to her last post, she had obtained supporting opinions from other specialists by the time of her final review in July 2020. There was no evidence that the consultant's opinions were "obviously dubious," that Tiffany's statements based thereon were "inherently improbable," or of any other circumstance that would allow an inference of negligence to persist in the face of Tiffany's efforts to verify her statements before making them. *See Bentley*, 94 S.W.3d at 596.

Ramsey's offered no evidence of the sort of imprudence that Ramsey's was required to demonstrate; even viewed in the light most favorable to Ramsey's, the record shows that Tiffany was not careless about the truth of her statements. *See Hoskins*, 517 S.W.3d at 843. We conclude that Ramsey's failed to offer clear and specific evidence of negligence. *See Te Lun Wang v. Xiangyu Cao*, No. 05-19-00918-CV, 2020 WL 7296999, at *7 (Tex. App.—Dallas Dec. 11, 2020, no pet.) (mem. op.) (reversing denial of TCPA motion due to the defamation claimant's lack of evidence concerning negligence); *Novosad v. LSG Vodka LLC*, No. 03-18-00804-CV, 2020 WL 4726599, at *9 (Tex. App.—Austin July 31, 2020, no pet.) (mem. op.) (same); *Crews v. Galvan*, No. 13-19-00110-CV, 2019 WL 5076516, at *7 (Tex. App.—Corpus Christi–Edinburg Oct. 10, 2019, no pet.) (mem. op.) (same). And if Ramsey's cannot prove mere negligence

for defamation purposes, it cannot clear the higher bar of malice concerning the same statements. Thus, its business disparagement claim must fall as well.

For both its claims, Ramsey's failed to carry its responsive burden under the TCPA, which requires dismissal. We sustain the Maggrets' third issue. This renders it unnecessary to consider their remaining issues.[4]

### III.    CONCLUSION

Texas Civil Practice and Remedies Code Section 27.009 mandates that if an action is dismissed under the TCPA, the trial court "shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action." Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1); *Van Der Linden v. Khan*, 535 S.W.3d 179, 203 (Tex. App.—Fort Worth 2017, pet. denied). We therefore reverse the trial court's order denying the TCPA motion and remand for the trial court to consider an appropriate award of court costs and reasonable attorney's fees.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: June 3, 2021

---

[4]Though not assigned as an issue, the Maggrets' brief raises a slew of objections to Ramsey's evidence. Only one of the objections, however, is adequately briefed, *see* Tex. R. App. P. 38.1(i); *J.F. v. J.F.*, No. 02-19-00029-CV, 2020 WL 4248681, at *2 n.1 (Tex. App.—Fort Worth July 23, 2020, pet. denied) (mem. op.), and the subject of that objection is a two-sentence snippet from an affidavit that plays no role in our resolution of this appeal. We therefore do not consider the merits of these objections. *See Miller*, 2021 WL 924843, at *9 n.3 (declining to consider various objections to TCPA affidavits because of inadequate briefing).