For the error mentioned, the judgment will be reversed, and the cause remanded.

## On State's Motion for Rehearing.

MORROW, P. J.

Counsel for the state has presented a motion for rehearing bearing evidence of much industry, research, and thought, which we have examined with interest, but are constrained to adhere to the conclusion stated in the original opinion; namely, that the hearsay evidence used against the appellant cannot be regarded as harmless, but, under the conditions revealed by the record, is clearly calculated to injure the accused.

The motion is overruled.

## SNIDER v. LEATHERWOOD.

No. 958.

Court of Civil Appeals of Texas. Eastland. March 25, 1932.

Rehearing Denied May 6, 1932.

Oxford & McMillan and J. A. Johnson, all of Stephenville, for appellant.

Chandler & Keith, of Stephenville, for appellee.

FUNDERBURK, J.

In August, 1930, J. W. Leatherwood and John Smith were opposing candidates for the nomination in the Democratic (run-off) primary for the office of county commissioner of precinct No. 2, which included the towns of Dublin, Clairette, Alexander, and Lingleville. Leatherwood lived at Lingleville in the northern part of the precinct, and Smith lived a few miles out of Dublin nearer the center of the precinct. Dr. Wm. W. Snider, a citizen of Dublin, wrote a letter which was duly received by the addressee, a citizen of Clairette, as follows:

"August 8, 1930.

"Dear Mr. Salmon: I am writing you about the Commissioner's race. I believe John Smith is the logical man to be supported. He is in the center of the district and I know he will give every part of the district what it deserves.

"You doubtless are aware that there has been a scheme on foot to have Highway 67 changed to go from Hico to Stephenville, Lingleville and Desdemona, and on west, cutting out Clairette, Alexander and Dublin. I have understood from reliable sources that the one who is to oppose John Smith has been for some time trying to get our Commissioner to build a good road from Lingleville toward Stephenville.

"I hope you will impress upon the voters down there the importance of having a commissioner who favors a highway going direct through Dublin, Clairette, Alexander and Hico, and I am sure that if Mr. Smith is elected he will do all in his power to get this highway built. I have known Mr. Smith for thirty years and I don't know a man in the district who would make a better commissioner.

"W. W. Snider."

Smith was nominated.

Leatherwood brought this suit against Dr. Snider for libel, based upon said letter. A part of the alleged libelous words were: "You doubtless are aware that there has been a scheme on foot to have Highway 67 changed to go from Hico to Stephenville, Lingleville and Desdemona, and on west, cutting out Clairette, Alexander and Dublin. I have understood from reliable sources that the one who is to oppose John Smith has been for some time trying to get our commissioner to build a good road from Lingleville toward Stephenville." As to the portion of the letter just quoted, it was alleged by way of innuendo that the words were intended to convey, and did convey to the said Salmon, and to such other people as the said Salmon could influence, "the false idea that plaintiff was engaged in and was cognizant of some diabolical scheme to have Highway No. 67 changed to go from Hico to Stephenville, Lingleville and Desdemona, and to cut out Clairette, Alexander and Dublin, and leave them without the benefit of said Highway No. 67." Another part of the letter complained of was: "I hope you will impress upon the voters down there the importance of having a commissioner who favors a highway going direct through Dublin, Clairette, Alexander and Hico." As to this it was alleged by way of innuendo that it was meant to and did leave the false impression "that this plaintiff was (not) such a commissioner and would (not) make such a commissioner if elected, and that he would oppose and seek to destroy and change Highway No. 67 going directly through Dublin, Alexander, Clairette and Hico, and thus greatly and materially injure each of said towns and the citizens there-

of"; that by said expression in said letter "defendant meant to convey and did convey the idea that plaintiff was not a man to be relied upon and not a safe man for commissioner; that he was opposed to the best interest of the people of Clairette, Alexander and Dublin, three large voting boxes within Commissioners Precinct No. 2, and that for this reason such voting boxes should not support plaintiff in said election, and that if they did do so they would vote against their own interest; that plaintiff was adverse and antagonistic to the interest of each of said towns and communities"; that thereby the defendant "did insinuate and did charge this plaintiff with being a traitor to the people of the commissioners precinct in which he was offering himself as a candidate for the Democratic nomination for commissioner of Precinct No. 2 of Erath County, Texas, and likewise charged plaintiff directly and indirectly with having entered into a scheme to have Highway 67 changed so as to go from Hico to Stephenville and leave out Alexander, Clairette and Dublin." As to the letter generally it was alleged "that by said writing and the statements therein contained the defendant meant to imply and did imply that the plaintiff was not a man of integrity but that he was possessed of a disposition to cheat, deceive and defraud, and that he was unworthy and discreditable; that he did not possess such qualities as he should possess for the office of Commissioner of Precinct No. 2 of Erath County, Texas, and that he is therefore dishonest and unworthy of trust." There were sufficient allegations as to the falsity of the alleged statements and imputations; that they were published maliciously and resulted in damages to the plaintiff.

The defendant answered by general demurrer, special exceptions, general denial, and, among other things, alleged the truth of the allegations, and that the letter and the occasion of its sending was privileged.

The jury, in answer to special issues, found: (1) That the letter charged plaintiff with having participated in a scheme to have highway No. 67 to go from Hico to Stephenville and Desdemona, and cut out Clairette, Alexander, and Dublin, and leave said communities without the benefit of highway No. 67; (2) that such charge was false; (3) that said letter "charged the plaintiff with being a person who could not be relied upon to give to the people of Alexander, Clairette and Dublin fair and honorable service as commissioner of Precinct No. 2"; (4) that this charge was false; (5) that $200 would reasonably and fairly compensate plaintiff for injuries sustained by him to his feelings, character, and reputation as a citizen; (6) that plaintiff's defeat in the run-off primary was attributable to the letter; (7) that $600 would fully compensate him for his pecuniary injuries sustained by reason of being so defeated; (8) that defendant, in writing and mailing out the letter, was actuated by malice; and (9) that plaintiff should pay $200 as exemplary damages. From a judgment for plaintiff for the total sum of $1,000, the defendant has appealed.

 Based upon assignments of error complaining of the action of the trial court in overruling a general demurrer, and certain special exceptions, appellant presents the question of whether, as a matter of law, the letter was susceptible of the meaning ascribed to it in the plaintiff's petition. The letter was not libelous per se. The occasion of its publication was privileged. The letter, if libelous, was only so by reason of unexpressed imputations reasonably inferable from all of the relevant facts and circumstances surrounding the writing and publication thereof. Plaintiff alleged (necessarily by way of inference) certain imputations which, if warranted by the facts, and if false and made with malice, would unquestionably be libelous. The allegations in the nature of inferences or conclusions and necessary in a case like this, where the publication complained of is not libelous on its face or per se, are called "innuendoes." It is the true function of an innuendo to explain *but not extend* the effect and meaning of the language used, and charged to be libelous. Guisti v. Galveston Tribune, 105 Tex. 497, 150 S. W. 874, 152 S. W. 167. "The office of the innuendo is to connect the defamatory matter with other facts and circumstances sufficiently expressed before for the purpose of showing the meaning and application of the charge. So, the innuendo cannot enlarge or restrict the natural meaning of words, introduce new matter, or make certain that which was uncertain, except insofar as it connects the words published with the extrinsic or explanatory circumstances alleged in the inducement or colloquium." 37 C. J. 24. Giving effect to these principles, it results that a general demurrer, while it admits the truth of the facts alleged, only admits the truth of such inferences therefrom as are reasonably warranted from such facts. A demurrer will not admit the truth of unreasonable or unwarranted inferences from the alleged facts. As said in 37 C. J. 52: "On demurrer the court will inquire whether the innuendo is warranted by the language used, considered in connection with the other facts to which it relates, and if not found warranted the demurrer will be sustained. unless the words without the innuendo are actionable." McCormick v. Houston Printing Co. (Tex. Civ. App.) 174 S. W. 853; Moore v. Leverett (Tex. Civ. App.) 33 S.W.(2d) 833; Enterprise Co. v. Wheat (Tex. Civ. App.) 290 S. W. 212; Express Publishing Co. v. Wilkins (Tex. Civ. App.) 218 S. W. 614; Express Publishing Co. v. Southwell (Tex. Civ. App.) 295 S. W. 181; Fuson v. Abilene Gas &

Elec. Co. (Tex. Civ. App.) 219 S. W. 208; Harris v. Santa Fe Townsite Co., 58 Tex. Civ. App. 506, 125 S. W. 77; Blum v. Kusenberger (Tex. Civ. App.) 158 S. W. 779; Democrat Publishing Co. v. Jones, 83 Tex. 302, 18 S. W. 652.

By application of these principles let us now consider if plaintiff's petition showed actionable libel. Libel is defined by statute. Rev. St. 1925, art. 5430. Omitting the elements of the statutory definition which can have no application to the state of facts presented, and including all elements which may have such application, the definition is: "A libel is a *defamation* expressed in * * * writing * * * tending to *injure the reputation* of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or [tending] to impeach the honesty, integrity * * * or *reputation* of any one." (Italics ours.) Under this definition there can be no libel unless the publication claimed to be libelous be (1) *a defamation* (2) tending to injure or impeach the *reputation* of the person claimed to have been libeled. It results, therefore, that not all false statements which cause financial injury are libelous. The financial injury which may be an element of actionable libel is, perforce of the definition, limited to such as results from injury to, or impeachment of, reputation. The false statements must be defamatory in their nature. Suppose, of an applicant for membership in a modern night club, a member publishes a writing which falsely states that the applicant is a preacher and therefore objectionable as a member, and which results in the rejection of the application and consequent financial injury. It is believed there would be no libel because of there being no defamation nor tendency to injure reputation. In the instant case we are led to the conclusion that no part of the letter was defamatory. Suppose it was true that there had been a scheme on foot to change highway No. 67. A scheme means: "A design or plan formed to accomplish some purpose. * * * A system." 35 Cyc. 799. Even if the letter conveyed the imputation that defendant was a party to or favored such a scheme, which we seriously doubt, we fail to see in it the characteristics of a defamation. To illustrate: Bits of the testimony in this case show that meetings were held and addresses made by prominent citizens of the county, including defendant's learned counsel, favoring the highway from Hico to Stephenville, Lingleville, etc. Can it be said that there is any suggestion of stigma or reproach attached to the fact that one may have favored such highway, even though the certain result would have been to cut out Clairette, Alexander, and Dublin? We think not. Certainly such a scheme would have justified no such description of it as "dia-bolical." How about the suggestion: "I hope you will impress upon the voters down there the importance of having a commissioner who favors a highway going direct through Dublin, Clairette, Alexander and Hico?" Can it be that, to say of a man that he did not favor such a highway was to defame him or tend to injure or impeach his reputation? We find ourselves unable to adopt that view. Did the expression of such a wish or desire imply (as in substance alleged) that plaintiff was a traitor to the people of the precinct; that he was not a man of integrity; that he was possessed of a disposition to cheat, deceive, and defraud; that he was unworthy and discreditable? To so hold, we think, would be to sanction the proposition that the innuendoes may change and greatly enlarge any reasonable meaning that the words could have. We have concluded that, as a matter of law, the letter, with all reasonable implications thereof or inferences to be drawn therefrom, was neither defamatory nor tended to injure or impeach the reputation of the plaintiff, and that therefore, however productive of injury to plaintiff's feelings or finances, constituted no actionable libel.

Appellant insists that there was no evidence of actual malice. There can be no contention that the letter was libelous per se. Allegations of plaintiff's own pleadings show that the occasion of the publication of the letter was privileged. The letter, if libelous, was only so by reason of unexpressed imputations. The letter stated two things as facts. One was, in substance, that there had been a scheme on foot to change highway 67 so that, instead of it running through the towns of Dublin, Alexander, and Clairette, it would run from Hico through Stephenville, Lingleville, and Desdemona. The other was that plaintiff had theretofore been endeavoring to get the county commissioner to build a good road from Lingleville *toward* Stephenville. These were the only two statements of fact in the letter material to be considered. If the letter conveyed the idea that the plaintiff was a party to the scheme to so change the highway, it did so only by way of an inference from said two facts. Conceding, for the purposes of discussion, that the facts justified such inference, it may be observed that in some jurisdictions it would be a very material inquiry whether the facts as distinguished from the inferences or conclusions therefrom were true or false. As said in 36 C. J. 1287: "When statements or allegations of fact in regard to the fitness or qualifications are false, but are published in good faith and without malice, the courts differ as to the extent of the immunity or privilege to be granted." After showing that, according to one rule, the "facts" upon which the comment or criticism of a candidate is based are required

to be true in order to be privileged, it is further said: "Some authorities grant to such communications published in good faith and without malice the same immunity or protection enjoyed by qualifiedly privileged communications whether the communication is true or false." 36 C. J. 1287. "In the absence of malice an utterance may be qualifiedly privileged even though it is not true." 17 R. C. L. p. 342, § 88. This rule was approved by our Supreme Court in Express Printing Co. v. Copeland, 64 Tex. 354, wherein it was stated: "Whatever pertains to the qualification of the candidate for the office sought is a legitimate subject for discussion and comment, provided that such discussion and comment is not extended beyond the prescribed limits. That is, all statements and comments in this respect must be confined to the truth, *or what in good faith and upon probable cause is believed to be true.*" (Italics ours.) In Behee v. Mo. Pac. Ry. Co., 71 Tex. 424, 9 S. W. 449, 450, the court said: "If a privileged communication, though false, is believed to be true by the publisher, and the language used to express the communication is not unnecessarily disparaging, and it is not shown by extraneous evidence to have been actuated by a malicious intent to injure, there can be no recovery." In St. L. S. W. Ry. Co. v. Pickel (Tex. Civ. App.) 256 S. W. 273, 275, the court said: "It is now the settled law that to hold one liable for even untrue and damaging statements made in a privileged communication it must be shown that the writer was inspired by actual malice." These authorities, we think, correctly declare the law as applied to a case like this. The rule is not to be confused with that applying to newspaper comment and criticism governed by the provisions of Rev. St. 1925, art. 5432. That statute, by its own terms, has no application. The question of malice here involved is a defense preserved by article 5433.

The jury did not find as a fact that there had been no scheme on foot to change highway 67. They did not find that defendant had not been trying to get the commissioner to build a good road from Linglewood toward Stephenville. What the jury did find (necessarily as an inference) was that defendant, by said letter, charged plaintiff with having participated in a scheme to have the highway changed. That finding was in no sense inconsistent with the truth of either or both of said statements of fact. But, in determining if there was any evidence of malice, we shall assume that one or both of the statements were untrue. "The malice which avoids the privilege is actual or express malice, existing as a fact at the time of the communication, and which inspired or colored it. Such malice exists where one casts an imputation which he does not believe to be true, or where the communication is actuated by

some sinister or corrupt motive or motives of personal spite or ill will or where the communication is made with such gross indifference to the rights of others as will amount to a willful or wanton act." I. & G. N. Ry. Co. v. Edmundson (Tex. Com. App.) 222 S. W. 181, 183; Bradstreet Co. v. Gill, 72 Tex. 115, 9 S. W. 753, 2 L. R. A. 405, 13 Am. St. Rep. 768; St. L. S. W. Ry. Co. v Pickel (Tex Civ. App.) 256 S. W. 273; Beehe v. Mo. Pac. Ry. Co., 71 Tex. 424, 9 S. W. 449, 450. In the last-cited case the Supreme Court, quoting from Townsend on Libel & Slander, § 462, said: "Malice or want of good faith is established by showing that the matter published was false within the knowledge of the publisher; or it may be established by showing bad motive in making the publication, as that it was made more publicly than was necessary to protect the interest of the parties concerned, or that it contained matter not relevant to the occasion, or that the publisher entertained ill will towards the person whom the publication concerned." Under the principle of these authorities, we have concluded that there was no evidence to raise an issue of malice. The only evidence we find which could even be plausibly contended as supporting such issue was that elicited from the defendant upon cross-examination, as follows: "I did not know how he stood on it except that he lived up in that upper part of the district." This was said in connection with a denial that defendant meant to infer and say from the content of the whole letter that Leatherwood was not a proper man. He further said: "I just did not care anything about Jim Leatherwood in this race." This was in explanation of his statement that, as a matter of fact, he was for Smith and for the interest of the district. We are unable to view this as evidence raising an issue of malice. It seems to us to be about upon a parity with the evidence of the coldness in manner of Martin, which was claimed to constitute some evidence in I. & G. N. Ry. Co. v. Edmundson, supra. If in any degree evidentiary, it would come under the mere scintilla rule as declared in Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059.

Plaintiff's own pleading sufficiently discloses the existence of a privileged occasion. Granted that the facts stated and the imputations thereof were untrue, there was no evidence that the defendant knew that they were untrue; there was sufficient evidence that they were true to repel any inference that plaintiff did not believe them to be true. There was an entire absence of any evidence of unnecessary publicity given to the letter. It was just as proper that its subject-matter be communicated to other voters of Clairette, Alexander, or Dublin as to the person addressed. We find no suggestion in the entire record of ill will or of any other motive than an anxious solicitude to have a commission-

er who would be wholeheartedly in favor of maintaining highway 67 through the towns of Dublin, Clairette, and Alexander.

While the existence or not of malice is ordinarily a question of fact for the jury, it is essential that there be some evidence of facts or circumstances in order to raise an issue of fact. I. & G. N. Ry. Co. v. Edmundson, supra; St. L. S. W. Ry. Co. v. Pickel, supra.

We are therefore of opinion that the trial court erred in submitting the issue of malice, and for the reasons herein discussed the judgment of the trial court should be reversed, and the cause remanded, which is accordingly so ordered.

HICKMAN, C. J., not sitting.