**AFFIRM in Part, REVERSE in Part, and REMAND; Opinion Filed December 7, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-01162-CV

### JOHN DAVID ADAMS, Appellant
### V.
### STARSIDE CUSTOM BUILDERS, LLC, Appellee

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-01104-2015**

# MEMORANDUM OPINION ON REMAND ON REHEARING

Before Justices Fillmore, Stoddart, and O'Neill[1]
Opinion by Justice Fillmore

We deny the motion for rehearing filed by John David Adams. On our own motion, we withdraw our opinion of August 24, 2018, and vacate the judgment of that date. The following is now the Court's opinion.

This interlocutory appeal is before us on remand from the Texas Supreme Court. In an amended petition, Starside Custom Builders, LLC sued John David Adams for defamation. Adams filed a supplemental motion to dismiss Starside's defamation claim pursuant to the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (TCPA).[2] Adams's supplemental motion was overruled by operation of law, and Adams appealed. On original

---

[1] The Hon. Michael J. O'Neill, Justice, Assigned

[2] Adams's original motion to dismiss targeted Starside's business disparagement claim. The original motion is not a subject of this appeal.

submission, we determined Adams failed to establish the TCPA applied to Starside's defamation claim and affirmed the trial court's ruling.

The supreme court reversed, concluding the TCPA applied because, even though the statements Starside claimed were defamatory did not expressly mention Starside, the statements related to Starside's services in the marketplace and to community and environmental well-being. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3), (7)(B),(E). The supreme court remanded the case to us to determine whether, under section 27.005 of the civil practice and remedies code, Starside established a prima facie case for each essential element of its defamation claim or Adams established a valid defense. *Adams*, 547 S.W.3d at 898; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c), (d).

In one issue, Adams contends Starside failed to present clear and specific evidence establishing a prima facie case that his statements were (1) defamatory as to Starside, (2) false statements of fact about Starside, (3) made negligently, or (4) defamatory per se. We affirm the trial court's denial of Adams's supplemental motion to dismiss Starside's defamation claim based on Adams's statements in his March 18, 2015 email regarding Starside's removal of trees from the common area of a residential subdivision and in the homepage of his blog, but reverse the trial court's denial of Adams's supplemental motion to dismiss Starside's defamation claim based on Adams's statement in his March 18, 2015 email comparing Phillip Pourchot to Sandy Golgart.

## Factual Background

Bentley Premier Builders, LLC, which was owned by Golgart and Pourchot, developed and constructed homes in the Normandy Estates subdivision in Plano, Texas. Adams and his wife own a home in the subdivision. On August 6, 2013, Bentley filed for bankruptcy protection.

Adams and several other homeowners subsequently filed a criminal complaint against Golgart for signing false "all bills paid" affidavits concerning their homes and for "commingling funds."

During Bentley's bankruptcy proceedings, Adams published an internet blog regarding his experiences with Bentley. The home page of the blog contains an image of Bentley's website superimposed with the statement that Bentley had "made life miserable" for builders, subcontractors, and families. Across the bottom of the page were tabs labeled "unpaid creditors," "commingled funds," "contract fraud/felony investigation," and "undisclosed felony conviction."[3] The blog page invited the reader to contact Golgart, Pourchot, or their attorneys for "their rebuttal to these allegations." The bankruptcy court ultimately confirmed a plan of reorganization for Bentley proposed by Pourchot. Bentley was then renamed Starside. Pourchot is the owner of Starside and its chief executive officer.

Behind Adams's home is a creek and a parcel of land owned by Starside and designated as a "common area" of the subdivision. Adams desired to purchase the common area to provide more privacy for his family and believed Starside had agreed in principle to sell him the land if the City of Plano approved the "replat." However, in late 2014, the Normandy Estates Homeowners Association (the HOA), with funds provided by Starside, began performing landscaping work in the common area, including the removal of small trees, brush, and undergrowth. Adams and his wife strongly objected to the landscaping work being done in the common area.

Adams sent an email on January 3, 2015, regarding a "meeting of willing homeowners" to discuss his concerns with "current workmanship on new builds." The record does not reflect all the recipients of this email, but it was forwarded to Starside's attorney by Marc Powell, Starside's president and a member of the board of the HOA. In the email, Adams stated that one of his issues with the HOA was "[l]and was cleared without getting the appropriate permits from the city."

---

[3] Any information that might have been accessed through these tabs is not in the record.

On March 15, 2015, Dr. Kim Castleberry, the president of the HOA, and his wife, were marking trees in the common area that were to be removed. Adams sent an email to Starside's attorney and a number of text messages to members of the board of the HOA threatening to shoot anyone who cut down trees in the common area. Pourchot contacted the Plano police department the following day. The police officer who spoke to Adams told Pourchot that Adams claimed he owned the common area.

On March 18, 2015, at 10:18 a.m., Starside sent an email to "Normandy Estates Owners" attaching a letter and "follow up attachments" concerning "an ongoing situation in the neighborhood." The information attached to the email is not in the appellate record and the email does not reveal the recipients. Adams sent a response to the email at 11:36 a.m.[4] that stated, as relevant to this appeal:

> First, I would like to apologize that this had to become public. It is a situation that frustrates our family very much, but we have tried to keep the rest of the neighborhood our [sic] of it, and have had no private (other homeowners) conversations regarding this since the first incident where the HOA clear cut land, and did not follow city ordinances on tree preservation. At that time, I sent out an email to see if anybody else was concerned, and only had 4 people indicate that it bothered them. For that reason, I stopped pursuing remedies.
>
> . . . .
>
> In order to avoid making claims that can not [sic] be substantiated, I will attempt to just provide verifiable facts. If you are interested in this, you can verify the facts for yourself, and I think it will give you a clear understanding that the issues we had with Sandy Golgart have continued on now that Phill is completely in control. Starside has made claims in their email that they can not [sic] substantiate. This does not matter to them though.

Adams then set out a recitation of his "verifiable facts" about the dispute over the common area.

---

[4] Although addressed to "HOW [sic] members" and sent as a response to Starside's email to "Normandy Estates Owners," Adams's March 18, 2015 email is specifically addressed only to Starside employee Cindy Warren, Pourchot, Castleberry, and Powell. In its response to Adams's supplemental motion to dismiss, Starside asserted Adams's email was sent "to the residents and builders." Attached to Starside's response were excerpts from Adams's deposition in which he was asked whether he sent an email "to any of the other homeowners" that Starside was cutting trees without getting appropriate permits. Adams stated he sent an email, but needed to refer to it for the "exact wording." Adams then admitted he "sent an e-mail that said, This is Sandy all over again." Adams did not assert in the trial court, and does not argue on appeal, that he did not send the March 18, 2015 email to the homeowners and builders who received Starside's email. Regardless, for purposes of our analysis, Adams specifically sent the email to Castleberry, who was neither an officer nor an employee of Starside.

## Procedural Background

Starside sued Adams and his wife on March 20, 2015, asserting claims against Adams for threat of imminent bodily injury and business disparagement. Starside also sought injunctive relief as well as a declaratory judgment stating that Starside owned the common area. In its claim for business disparagement, Starside did not set out any specific conduct by Adams that it alleged caused it harm, stating generally that Adams had "maliciously made false and disparaging statements regarding [Starside], about CEO Pourchot's character and as a business person."

Adams moved to dismiss Starside's business disparagement claim pursuant to the TCPA. Starside filed an amended petition, dropping its claim for business disparagement and adding a claim for defamation that was based on the homepage of Adams's 2014 blog and Adams's March 18, 2015 email. As to the blog, Starside asserted the page included Golgart's and Pourchot's names and contained a tab entitled "undisclosed felony conviction." Starside alleged that, because this tab contained a picture of a man's handcuffed wrists, it "appears to say" Pourchot has an undisclosed felony conviction. Starside alleged the March 18, 2015 email contained the defamatory statements that "the issues we had with Sandy Golgart have continued on now that Phill is completely in control," and "land was cleared without getting the appropriate permit from the City."[5] Starside contended these statements were defamatory because they tended to injure its reputation, impeached its honesty and integrity, and exposed it to contempt, hatred, and financial injury. Starside also alleged the statements in the March 18, 2015 email were defamatory per se because they suggested it was guilty of violating City of Plano ordinances and engaging in felony criminal activity.

---

[5] This exact statement was made in the January 15, 2015 email sent by Adams, not the March 18, 2015 email. However, Adams stated in the March 18, 2015 email that the HOA had "clear cut land, and did not follow city ordinances on tree preservation," a statement very similar to the statement in the January 15, 2015 email. Because Starside's claim is based on the March 18, 2015 email, we will address whether it provided clear and specific evidence to establish a prima facie case that the statements in that email were defamatory.

Adams filed a three-page supplemental motion to dismiss Starside's defamation claim. The supplemental motion incorporated Adams's original motion to dismiss and briefly addressed the elements of a claim for defamation.

In its response to the supplemental motion to dismiss, Starside argued it was defamed by (1) Adams's statements in the March 18, 2015 email that "I think it will give you a clear understanding that the issues we had with Sandy Golgart have continued on now that Phill is completely in control" and Starside "did not follow city ordinances on tree preservation" and (2) the information on the homepage of Adams's blog that contained Pourchot's name and a tab labeled "Undisclosed Felony Conviction" that showed the arms of a handcuffed man. Attached to Starside's response were (1) excerpts from Adams's deposition, (2) Pourchot's affidavit, (3) a January 17, 2015 email from Starside's counsel to Adams, (4) a January 2, 2015 email from Erica Marohnic, a Senior Planner with the City of Plano, regarding tree removal permits, (5) a March 15, 2015 email from Adams to Starside's attorney in which he stated he would, after giving warning, shoot people to protect his property, (6) texts from Adams to Powell in which Adams threatened to shoot "anybody touching any trees," (7) a survey plat showing the common area, (8) a picture of a creek adjacent to a fence, (9) a police report pertaining to the investigation of Adams's comments, (10) Adams's March 18, 2015 email, (11) the home page from Adams's blog, (12) a 2014 email chain pertaining to Bentley's bankruptcy and criminal charges filed against Golgart, (13) Findings of Fact and Conclusions of Law Regarding Confirmation of Proposed, Competing Plans of Reorganization filed in Bentley's bankruptcy proceedings, and (14) a January 3, 2015 email from Adams regarding a meeting of willing homeowners to discuss Adams's concerns, including improvements to the common areas and land being cleared without getting appropriate permits. Adams's supplemental motion to dismiss was denied by operation of law. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.005(a), 27.008(a).

**Standard of Review and Governing Law**

The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. To facilitate this purpose, the TCPA provides a procedure for expeditiously dismissing a non-meritorious legal action that is based on, relates to, or is in response to a party's exercise of certain delineated rights, including the right to free speech, which is defined as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), 27.005(b),(c); *see also Hersh v. Tatum*, 526 S.W.3d 462, 463 (Tex. 2017). "In other words, the TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *Mohamed v Ctr. for Sec. Policy*, 554 S.W.3d 767, 773 (Tex. App.—Dallas 2018, pet. denied); *see also In re Lipsky*, 460 S.W.3d at 589.

To obtain dismissal under the TCPA, the movant bears the initial burden of showing by a preponderance of the evidence "that the legal action is based on, relates to, or is in response to the party's exercise of" a statutorily protected right. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *see also In re Lipsky*, 460 S.W.3d at 586. If the movant carries its initial burden, the nonmovant must then establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see also In re Lipsky*, 460 S.W.3d at 587. If the plaintiff meets this burden, the burden again shifts and, to be entitled to dismissal, the movant must establish by a preponderance of the evidence "each essential element of a valid defense to the nonmovant's claim." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d); *see also Adams*, 547 S.W.3d at 892.

Because the supreme court has determined Adams carried his burden of showing the TCPA applies to Starside's claim and Adams has not asserted in this appeal that he established by a

preponderance of the evidence each essential element of a valid defense to Starside's claim, the only issue before us is whether Starside met its burden of establishing by clear and specific evidence a prima facie case for each essential element of its defamation claim. We review this question de novo. *Vodicka v. A.H. Belo Corp.*, No. 05-17-00728-CV, 2018 WL 3301592, at *3 (Tex. App.—Dallas July 5, 2018, pet. denied) (mem. op.).

When determining whether a legal action should be dismissed under the TCPA, the court must consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a); *Adams*, 547 S.W.3d at 892. A "prima facie case" refers to "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d at 590. It is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam) (orig. proceeding)). Therefore, the "TCPA's direction that a claim should not be dismissed 'if the party bringing the legal action establishes by *clear and specific evidence a prima facie case* for each essential element of the claim in question' . . . describes the clarity and detail required to avoid dismissal." *In re Lipsky*, 460 S.W.3d at 590 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c)). This standard requires more than "mere notice pleading," and the nonmovant must "provide enough detail to show the factual basis for its claim," *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam); *see also Mohamed*, 554 S.W.3d at 773. This pleading requirement, however, does not impose an elevated evidentiary standard or categorically reject circumstantial evidence. *In re Lipsky*, 460 S.W.3d at 591. In a defamation case that implicates the TCPA, pleadings and evidence that establish the "facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Id.* at 591.

**Defamation**

To establish a cause of action for defamation, a plaintiff must prove (1) the defendant published a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) made with the requisite degree of fault, and (4) which caused damages, unless the statements were defamatory per se. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). Defamation may occur through slander, which is a defamatory statement expressed orally, or libel, which is a defamatory statement expressed in written or other graphic form. *Id.* at 623–24.[6]

The first issue in a defamation action, whether the statement is "reasonably capable of a defamatory meaning," is a question of law. *Id.* at 625. This inquiry is objective, not subjective, and involves two steps. *Id.* We determine first whether "the meaning the plaintiff alleges is reasonably capable of arising from the text of which the plaintiff complains." *Id.* Second, if the meaning is reasonably capable of arising from the text, we determine whether the meaning is reasonably capable of defaming the plaintiff. *Id.* If the statement is not reasonably capable of a defamatory meaning, the statement is not defamatory as a matter of law, and the claim fails. *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013).

Defamation can be either "per se" or "per quod." *Tatum*, 554 S.W.3d at 624. A statement constitutes defamation per se if it is so "obviously detrimental to one's good name that a jury may presume general damages, such as for loss of reputation or for mental anguish." *Id.* A statement is typically classified as defamatory per se if it injures a person in his office, profession, or occupation. *Id.*; *Bedford*, 520 S.W.3d at 905. A statement injures a person in his profession if it "ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private

---

[6] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 ("A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.").

office[.]" *Hancock*, 400 S.W.3d at 66 (quoting RESTATEMENT (SECOND) OF TORTS § 573 (1977)). "Defamation per quod is simply defamation that is not actionable per se." *Tatum*, 554 S.W.3d at 624.

Historically, the common law also used the term "defamation per se" to refer to a statement that "is defamatory by its text alone" and the term "defamation per quod" to refer to a statement "whose defamatory meaning required reference to extrinsic facts." *Id.* at 625. Because this distinction "is not the same as that between defamation which is actionable of itself and that which requires proof of special damages," the supreme court has adopted the terms "textual defamation" to refer to "defamation that arises from the statement's text without reference to any extrinsic evidence" and "extrinsic defamation" to refer to "defamation that *does* require reference to extrinsic circumstances." *Id.* at 626.[7]

"Textual defamation" occurs when a "statement's defamatory meaning arises from the words of the statement's itself, without reference to any extrinsic evidence." *Id*. A plaintiff bringing a textual-defamation claim may allege a defamatory meaning arises (1) explicitly from the statement, (2) implicitly as a result of the publication's entire gist, or (3) implicitly from a distinct portion of the publication rather than from the publication's as-a-whole gist. *Id.* at 627–28.

"Extrinsic defamation occurs when a statement whose textual meaning is innocent becomes defamatory when considered in light of 'other facts and circumstances sufficiently expressed before' or otherwise known to the reader." *Id.* at 626 (citing *Snider v. Leatherwood*, 49 S.W.2d 1107, 1109 (Tex. Civ. App.—Eastland 1932, writ dism'd w.o.j.)). An extrinsically defamatory

---

[7] In doing so, the supreme court ratified "the continued usage of (and distinction between) 'defamation per se' and 'defamation per quod' as used in relation to special damages." *Tatum*, 554 S.W.3d at 626.

–10–

statement requires extrinsic evidence to be defamatory at all. *Id.* Further, a plaintiff relying on extrinsic defamation must assert the theory in his petition to present it at trial. *Id.*

### Defamatory Nature of Statements

Starside relied on three statements made by Adams to support its defamation claim: (1) the homepage of Adams's blog that includes Pourchot's, Golgart's, and Bentley's names with tabs for "unpaid creditors," "commingled funds," "contract fraud/felony investigation," and "undisclosed felony conviction"; (2) Adams's statement in the March 18, 2015 email that trees were removed from the common area without complying with City of Plano ordinances; and (3) Adams's statement in the March 18, 2015 email that "the issues we had with Sandy Golgart have continued on now that Phill is completely in control." Adams contends Starside failed to offer clear and specific evidence the statements were defamatory as to Starside because (1) the communications were non-actionable rhetorical hyperbole opinions about persons other than Starside, (2) Starside presented no specific and direct evidence of the defamatory nature of the opinions, and (3) the statements that Starside did not obtain permits from the City of Plano before removing trees from the common area were true.

Whether a statement is defamatory is a question of law. *Campbell v. Clark*, 471 S.W.3d 615, 624 (Tex. App.—Dallas 2015, no pet.). In addressing Adams's arguments, we must determine the nature of each of Starside's claims and whether Starside provided clear and specific evidence in support of each claim in light of the nature of the claim.

*Extrinsic-Defamation Claim*

In its first amended petition, Starside alleged that Adams's statement in the March 18, 2015 email comparing Pourchot to Golgart was defamatory because it suggested:

> [Starside was] guilty of . . . engaging in felony criminal activity, not only because of the blog web page, but also because especially as [sic] Adams and several other Normandy Estates residents previously filed a criminal complaint against Ms. Golgart, for fraud, and Mr. Adams, by his internet blog posted last year, had

accused her of felonious activity, and mentioned a past felony criminal conviction. Many of the residents and several builders had negative experiences with Ms. Golgart.

Adams's statement that "the issues we had with Sandy Golgart have continued on now that Phill is completely in control" is not explicitly defamatory. However, Starside alleged the email was sent "to residents and builders," and that, based on extrinsic circumstances known to the residents and builders, Adams's comparison of Pourchot to Golgart had the defamatory meaning that Pourchot had committed a felony. Accordingly, Starside pleaded the statement was extrinsically defamatory.

In response to Adams's supplemental motion to dismiss, Starside provided the March 18, 2015 email; the homepage from Adams's blog; Pourchot's affidavit stating he was Starside's owner and CEO, Golgart had signed a false "all bills paid" affidavit, and Adams and other homeowners in the subdivision had filed criminal charges against Golgart, accusing her of commingling funds; a May 24, 2014 email from Adams to Starside's attorney stating Adams had met with three other families, and "conference called" two additional families, regarding the criminal charges filed against Golgart; findings of fact made by the bankruptcy court in Bentley's bankruptcy proceeding that Golgart's customers were unhappy with her work and blamed her for liens that were placed on their homes after she failed to pay all the bills due to mechanics and materialmen and the trustee did not ask Golgart to serve on the board of the directors for the HOA because the homeowners in the subdivision strongly disliked her; and Adams's deposition testimony that he published a blog containing information that Golgart had a criminal conviction and he and five other homeowners "put a police report in" about Golgart signing false affidavits and commingling funds.

Starside alleged that, based on extrinsic evidence known to the Normandy Estates homeowners and builders, Adams's statement comparing Pourchot to Golgart conveyed that

–12–

Starside or its owner and CEO had committed a crime.  Based on Starside's pleading of extrinsic-defamation and the evidence it offered in support of that pleading, we conclude Starside provided clear and specific evidence to support its claim that Adams's comparing Pourchot to Golgart conveyed the defamatory meaning alleged by Starside.

### Implicit Textual-Defamation Claims

Neither Adams's statement in the March 18, 2015 email that the HOA "clear cut land" and "did not follow city ordinances on tree preservation" nor the homepage of Adams's blog were explicitly defamatory.  Further, although Starside alleged both of these statements accused it of violating the law, it did not allege any extrinsic facts to support the alleged defamatory meaning.  Accordingly, as to these two statements, Starside asserted a textual-defamation claim that can be sustained only if the alleged defamatory meaning arises implicitly from the entire gist of the publication or from distinct portions of the article.  *See Tatum*, 554 S.W.3d at 628.[8]

"Gist" is the "publication or broadcast's main theme, central idea, thesis, or essence."  *Id.* at 629.  "Implication," however, refers to the "inferential, illative, suggestive, or deductive meanings that may emerge from a publication or broadcast's discrete parts."  *Id.*  It includes "necessary logical entailments as well as meanings that are merely suggested."  *Id.*

---

[8] Starside did not use the term "gist" in its first amended petition.  However, it alleged that (1) based on the inclusion in the blog of Pourchot's name, a tab titled "undisclosed felony conviction, and a picture of the arms of a handcuffed man, the blog "appear[ed] to say" Pourchot had an undisclosed felony conviction and (2) the statements in the March 18, 2015 email "suggest[ed]" Starside is "guilty of violating City codes."  Adams did not file any special exceptions seeking additional information regarding these allegations.

Starside also relied on the "gist" of the statements in its response to Adams's motion to dismiss by asserting the blog and the March 18, 2015 email "state[d] or impl[ied] that Starside/its CEO has violated statutes, committed a felony, was guilty of dishonesty, underhanded business dealings and incompetence."

In his brief on appeal, Adams acknowledged that Starside (1) had pleaded the complained-about statements "suggested" that Starside was guilty of violating City of Plano ordinances and of engaging in felony criminal activity and (2) contended "the blog and Adams'[s] e-mail imply that Pourchot has an undisclosed felony conviction and engaged in criminal or fraudulent acts" and the "statements regarding two individuals are impliedly statements that harm Starside's reputation as a service provider in the community."  Starside responded in its brief that the blog and the March 18, 2015 email were defamatory per se because they "state[d] or impl[ied]" that Starside and Pourchot had violated statutes, committed a felony, were dishonest, had engaged in underhanded business dealings, or were incompetent.  Starside specifically argued the March 18, 2015 email "impute[d] criminal behavior" by implying that Starside or Pourchot had engaged in criminal or dishonest behavior and the blog "equate[d]" to saying that Pourchot had an undisclosed felony conviction.

On this record, we conclude Starside pleaded, preserved, and argued on appeal that the "gist" of the March 18, 2015 email and of the home page of the blog was defamatory.

In an implication case, our task "is to determine whether the implication the plaintiff alleges is among the implications that the objectively reasonable reader would draw." *Id.* at 631. This is an objective inquiry, which asks whether the publication can be reasonably understood as stating the proposed meaning. *Id.* If we conclude the statement is reasonably capable of the alleged meaning, we must then consider whether that answer exerts too great a chilling effect on First Amendment activities. *Id.* at 632.

Because "the potential chilling effect is especially strong in defamation-by-implication cases," *id.*, the plaintiff must make an especially rigorous showing of the publication's defamatory meaning, *id.* at 633. This requires the plaintiff to point to "additional, affirmative evidence" within the publication that suggests the defendant intends or endorses the defamatory inference. *Id.* at 635. Relevant considerations in this objective analysis are whether, based on the publication as a whole, (1) the publication clearly disclosed the factual bases for the statements it impliedly asserts; (2) the allegedly defamatory implication aligns or conflicts with the article's explicit statements; (3) the publication accuses the plaintiff in a defamatory manner as opposed to simply reciting that others have accused the plaintiff of the same conduct; (4) the publication reports separate sets of facts or links the key statements together; and (5) the publication specifically includes facts that negate the alleged implications. *Id.* In a "gist" case, "if a meaning is reasonably capable of being communicated from the gist as a whole, the fact that the gist arises will be sufficient textual evidence that the publisher meant to communicate it." *Id.* at 636. However, in a discrete-implication case, we must be particularly cognizant of whether allowing the case to go to a jury "would, in the totality of the circumstances, endanger first amendment freedoms." *Id.*

Starside alleges Adams stated in the March 18, 2015 email that it violated the law by cutting trees in the common area. However, Adams did not explicitly state Starside committed a crime. Further, the "gist" of the email was that Starside and Adams were involved in a dispute over the

–14–

ownership of the common area that had led to certain altercations. *See id.* at 629 ("In this usage, publications and broadcasts typically have a single gist."). In support of this "gist," Adams stated the HOA "clear cut" land and did not follow City of Plano ordinances, Castleberry "got irritated" with Adams's wife asking that he "verify with the city that it was o.k. to knock down trees," pictures obtained from Google Earth showed there had been a "mass cutting" of trees, Pourchot was in control, and he met with "Phill's attorneys" in an attempt to "convince them that city code needed to be followed to cut down a huge area of trees." Starside, therefore, has asserted an implicit textual-defamation claim based on these statements.

Because, viewed objectively, Adams's statements are "reasonably capable" of conveying that Starside violated the law by cutting trees in the common area, we must consider whether the email contains additional, affirmative evidence that Adams intended or endorsed this defamatory inference. Objectively viewing the entire March 18, 2015 email, Adams stated there had been a "clear" or "mass" cutting of the trees by the HOA and he and his wife had repeatedly raised whether the removal of the trees complied with City of Plano ordinances. Adams also stated Pourchot was in control and Adams had discussed with Pourchot's attorneys whether the removal of the trees complied with City of Plano ordinances. Adams linked the stated facts throughout the email and repeatedly returned to the theme that the removal of the tress was unlawful. We conclude Adams's statements throughout the email are additional, affirmative evidence that he intended or endorsed the inference that Starside violated the law when it removed trees from the common area. We, therefore, conclude Starside provided clear and specific evidence to support its claim that Adams defamed it by stating in the email that Starside violated the law when it removed trees from the common area.

Starside also alleged Adams stated in the blog that it, or its owner and CEO, had committed a crime. The blog had Bentley's name in large font at the top and the following statement in the middle of the page:

> HOW A WEST PLANO DEVELOPER
>    TOOK A PRIME PLANO LOCATION
>        A GROUP OF HIGH END HOME BUILDERS
>            SEVERAL HARD WORKING SUBCONTRACTORS
>                A FEW FAMILIES EAGER TO BUILD NEW HOUSES
> AND
>                MADE LIFE MISERABLE FOR ALL INVOLVED

At the bottom of the page were tabs labeled "unpaid creditors," commingled funds," "contract fraud/felony investigation," and "undisclosed felony conviction." To the left, in a much smaller font, Adams stated:

> This web site does not represent Bentley Premier Builders, and does not claim innocence or guilt in the allegations provided. The documents referenced are public records and should be reviewed by any interested party.

Adams invited individuals to contact Golgart, Pourchot, or their attorneys for a "rebuttal to these allegations."

Adams, in large font, stated the name "Bentley" and then included tabs linked to "felony investigation" and "undisclosed felony conviction." Adams did not state on the homepage of the blog that only Golgart committed a crime. Rather, he included Golgart's name only where, in a much smaller font, he invited the reader to contact her for a "rebuttal" of the allegations. Accordingly, the gist of the page was that Bentley committed a crime and Golgart or Pourchot could be contacted to rebut the allegation. Further, Adams's invitation to the reader to review the referenced documents was affirmative evidence that he endorsed the inference that Bentley had committed a crime. *See id.* at 636 ("Thus, it will usually be the case that if a meaning is reasonably capable of being communicated from the gist as a whole, the fact that the gist arises will be sufficient textual evidence that the publisher meant to communicate it."). We conclude Starside

provided clear and specific evidence to support its claim that Adams defamed it by stating in the blog that Starside had committed a crime.

*Statement About Starside*

Adams next argues Starside failed to provide clear and specific evidence that he published a defamatory statement about Starside because the complained-about statements were directed at Bentley or Pourchot and not at Starside.

To be actionable, a defamatory statement must be directed at the plaintiff as an ascertainable person. *Vodicka*, 2018 WL 3301592, at *8; *see also Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 893 (Tex. 1960). However, it is not necessary that the plaintiff be named in the publication if those who knew and were acquainted with the plaintiff understood from reading the publication that it referred to the plaintiff. *Newspapers, Inc.*, 339 SW.2d at 894; *Champion Printing & Copying LLC v. Nichols*, No. 03-15-00704-CV, 2017 WL 3585213, at *17 (Tex. App.—Austin Aug. 18, 2017, pet. denied) (mem. op.). "'A defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer.'" *Houseman v. Publicaciones Paso del Norte, S.A. DE C.V.*, 242 S.W.3d 518, 525 (Tex. App.—El Paso 2007, no pet.). The false statement must point to the plaintiff and "to no one else." *Newspapers, Inc.*, 339 S.W.2d at 894; *Houseman*, 242 S.W.3d at 525.

Absent an ambiguity in the disputed language, the question of whether an aggrieved party is referenced in a defamatory statement is a question of law for the court. *Newspapers, Inc.*, 339 S.W.2d at 893; *Nichols*, 2017 WL 3585213, at *17. The appropriate inquiry is objective, not subjective. *Houseman*, 242 S.W.3d at 525.

In our original opinion, we concluded Adams failed to establish by a preponderance of the evidence that the TCPA applied to Starside's claim because Adams's statements were not about Starside. Adams appealed, and the Texas Supreme Court disagreed with our conclusion:

> The court of appeals rejected Adams's argument that his statements related to Starside's services in the marketplace. The court reasoned that "the complained-about statements do not mention Starside at all." Technically, this is true. But only very technically. Adams's challenged statements mention both Starside's corporate predecessor, Bentley, and Starside's CEO and owner, Pourchot. The parties do not dispute that Bentley changed its name to Starside after Bentley's bankruptcy. Starside's own petitions allege that Starside is the developer of the subdivision, which must mean that Starside considers itself the alter ego of Bentley, the company that actually developed the neighborhood.

*Adams*, 547 S.W.3d at 895 (internal citations omitted). The supreme court continued:

> The allegation that a neighborhood developer and the HOA it controls have chopped down residents' trees, generally made life miserable for the residents, and engaged in unspecified other corrupt or criminal activity is of public concern for the residents of the neighborhood. It is also of concern for residents of other neighborhoods built by the developer and for people considering whether to buy homes in any of the developer's neighborhoods.

*Id.* at 897.

The supreme court has determined Adams's statements related to Starside's services in the marketplace because the statements mentioned Bentley, the developer of the subdivision, and Pourchot, Starside's owner and CEO, and alleged that Starside controlled the HOA. Further, the statements in the blog were made during Bentley's bankruptcy proceedings, which involved the homeowners in the subdivision, and the statements in the March 18, 2015 email were made to the residents of the subdivision, who were familiar with Bentley, Starside, Pourchot, and Golgart. Under these circumstances, we conclude the readers of the blog and the March 18, 2015 email would understand Adams's statements were intended to refer to Starside and that the statements pointed to no one else.

*False Statement*

Adams also asserts the statement Starside failed to obtain a permit from the City of Plano before cutting down trees in the common area was literally true because Starside admitted it did not obtain a permit.[9] However, as set out above, the relevant gist of the March 18, 2015 email was that Starside violated the law by cutting down the trees in the common area without obtaining a permit. Starside produced evidence it was not required to obtain a permit from the City of Plano prior to removing the trees and, therefore, did not violate the law in removing the trees. Accordingly, even if Adams's statement were literally true, the gist of the statement was false.

*Statement of Fact Versus Opinion*

Adams finally contends Starside failed to offer clear and specific evidence that Adams published a defamatory statement because his statements in the blog and March 18, 2015 email were "non-actionable rhetorical hyperbole or opinion."[10] An opinion cannot support a claim for defamation. *Tatum*, 554 S.W.3d at 624, 638. "'[S]tatements that are not verifiable as false' are not defamatory." *Id.* at 638 (quoting *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013)). Further, even when a statement is verifiably false, "it does not give rise to liability if 'the entire context in which it was made' discloses that it is merely an opinion masquerading as fact." *Id.* at 624; *see also Milkovich v. Lorain Journal Co.*, 497 U.S.1, 21--22 (1990). "A statement that fails either test— verifiability or context—is called an opinion." *Tatum*, 554 S.W.3d at 638. Whether a statement is an opinion is a question of law. *Id.* at 639.

---

[9] This Court has noted that "[p]lacing the burden of proving truth or falsity is a complex matter" in light of post-*Lipsky* cases in which our sister courts have concluded that a "private plaintiff" is not required to prove falsity of defamatory statements in certain cases. *Moldovan v. Polito*, No. 05-15-01052-CV, 2016 WL 4131890, at *5 n.4 (Tex. App.—Dallas Aug. 2, 2016, no pet.) (mem. op.); *see also MacFarland v. Le-Vel Brands LLC*, No. 05-16-00672-CV, 2017 WL 1089684, at *11 n.15 (Tex. App.—Dallas Mar. 23, 2017, no pet.) (mem. op.). We need not address that question in this case because we have concluded the gist of Adams's statement was that Starside violated the law by not complying with City of Plano ordinances before removing trees from the common area, and Starside provided evidence that this statement was false.

[10] "Rhetorical hyperbole" is "extravagant exaggeration [that is] employed for rhetorical effect." *Backes v. Misko*, 486 S.W.3d 7, 26 (Tex. App.—Dallas 2015, pet. denied). "For example, the use of 'rewarding,' 'ripping off,' and 'bilking' when reviewed in context have been considered rhetorical hyperbole." *Id.*

The complained-about statements in the blog and the March 18, 2015 email, either standing alone or in connection with extrinsic evidence, conveyed that Pourchot, Starside's owner and CEO, or Starside had committed a crime. In his affidavit, Pourchot denied he had ever been convicted of a crime or commingled funds or that he operated Starside in the same manner as Golgart. Starside also offered evidence through an email from its counsel to Adams and an email authored by a City of Plano planner that Starside's removal of trees in the common area had not violated a City of Plano ordinance. Accordingly, Starside offered clear and specific evidence that the statements were verifiably false.

Further, the context in which the statements were made does not demonstrate the statements were simply Adams's opinions. In the blog, Adams invited the reader to review public records that supported his statements and to contact Pourchot, Golgart, or their attorneys for a rebuttal. In the March 18, 2015 email, Adams stated affirmatively that the common area was "clear cut" without complying with appropriate ordinances and that the Normandy Estates subdivision was having the same "issues" with Pourchot as with Golgart. He provided purported "verifiable facts" to support the statements. Nothing about the context of the statements indicate Adams was engaged in "rhetorical hyperbole" or expressing an opinion.

We conclude that, as to the complained-about statements, Starside carried its burden of offering clear and specific evidence that Adams published false statements of fact to a third party that were defamatory as to Starside.

**Negligence**

Adams next argues that Starside failed to produce clear and specific evidence to establish a prima facie case that he published the statements negligently. If a plaintiff in a defamation case is a public figure or official, the plaintiff must show the defendant acted with actual malice regarding the truth of the statement. *In re Lipsky*, 460 S.W.3d at 593. If, however, the plaintiff is

–20–

a private figure, it need only show the defendant was negligent. *Id.* Adams does not dispute Starside is a private figure.[11]

Because Starside is a private person, it was required in response to Adams's supplemental motion to dismiss to produce clear and specific evidence that Adams acted negligently regarding the truth of his statements. *Id.* In the context of a defamation action, a person acts negligently if he knew or should have known a defamatory statement was false, *Neely*, 418 S.W.3d at 72, or failed to investigate the truth or falsity of the statements, *Hoskins v. Fuchs*, 517 S.W.3d 834, 843 (Tex. App.—Fort Worth 2016, pet. denied), *cert. denied*, No. 18-400, 2018 WL 4681884 (Nov. 13, 2018).

Adams argues Starside failed to produce clear and specific evidence that he acted negligently because the statements were his "personal opinions based on his own personal knowledge of the situation and the facts surrounding his dispute with Starside." However, we have already concluded the complained-about statements were not opinions. Therefore, the question is whether Adams made the statements when he knew or should have known they were false.

As to the homepage of the blog, Starside presented evidence that, during Bentley's bankruptcy proceedings, Adams was upset with Golgart, filed criminal charges against her, and posted the blog. In his deposition, Adams testified the blog was based on information he learned about Golgart. However, he presented the information contained in the blog in such a way that it reasonably could be read as conveying that Bentley had been accused and convicted of criminal conduct.

---

[11] We recognize that whether a plaintiff is a public figure or official is a question of law that cannot be conceded by the parties. *Hoskins v. Fuchs*, 517 S.W.3d 834, 841 (Tex. App.—Fort Worth 2016, pet. denied), *cert. denied*, No. 18-400, 2018 WL 4681884 (Nov. 13, 2018). However, after reviewing the record, we conclude nothing supports a determination that Starside is either a general-purpose public figure or a limited-purpose public figure for purposes of defamation liability. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974) (defining public figure); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (setting out three-part test for determining if person is limited-purpose public figure).

In the March 18, 2015 email, Adams first compared Pourchot to Golgart. Adams testified in his deposition that the statement was "referring to the powers that be not working with the homeowners on anything and just doing it." However, in the email, he did not limit the statement to this meaning and published the statement to individuals who were aware of Golgart's prior criminal conduct. Adams also conveyed in the March 18, 2015 email that Starside had failed to comply with City of Plano ordinances when it removed trees from the common areas. Starside not only provided evidence from the City of Plano that it was not required to obtain a permit prior to cutting the trees, but also evidence that it had provided that information to Adams in January 2015.

We conclude Starside offered at least a minimum quantity of clear and specific evidence necessary to support a rational inference that Adams acted negligently in making the complained-about statements.

**Damages**

Finally, Adams asserts Starside failed to offer clear and specific evidence of actual damages or that the complained-about statements were defamatory per se. In response to Adams's supplemental motion to dismiss, Starside presented no evidence of actual damages from Adams's statements. Accordingly, Starside established a prima facie case only if the statements were defamatory per se.

Whether a statement qualifies as defamation per se is generally a question of law. *In re Lipsky*, 460 S.W.3d at 596. "Defamation per se" refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed. *Tatum*, 554 S.W.3d at 624. A statement may be deemed defamatory per se if it accuses a person of committing a crime, having a foul or loathsome disease, or engaging in serious sexual misconduct. *In re Lipsky*, 460 S.W.3d at 596. A statement that adversely reflects on a person's fitness to conduct its business or trade is also deemed defamatory per se. *Id.*; *see also Tatum*, 554 S.W.3d at 624. When

–22–

an offending publication qualifies as defamation per se, a plaintiff may recover general damages without proof of any specific loss. *In re Lipsky*, 460 S.W.3d at 596.

We first consider Starside's textual-defamation claims based on Adams's statements in the March 18, 2015 email that Starside failed to comply with City of Plano ordinances when removing trees from the common area and in the homepage of the blog. We have concluded those statements, either through the gist of the blog or through discrete statements in the email, reasonably could be construed as accusing Starside of committing a crime. Further, a claim that Starside had an undisclosed felony conviction or failed to comply with applicable City of Plano ordinances would adversely reflect on its fitness, as a home builder, to properly conduct its business. *See Adams*, 547 S.W.3d at 895 (concluding TCPA applied because statements in March 18, 2015 email related to Starside's services and Adams contended it was performing one of those services "illegally and in violation of [his] property rights"); *Hancock*, 400 S.W.3d at 66. Accordingly, those statements were defamatory per se, and Starside was not required to establish actual damages. *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 438–39 (Tex. 2017) (concluding that because "gist" of article could reasonably be construed as accusing plaintiff of committing a crime, article was defamatory per se); *In re Lipsky*, 460 S.W.3d at 596 (concluding statement that adversely reflects on person's ability to conduct business is defamatory per se); *Mustang Athletic Corp. v. Monroe*, 137 S.W.3d 336, 340 (Tex. App.—Beaumont 2004, no pet.) ("We are aware of no authority and Mustang refers us to none, wherein the court's finding of defamation depended on whether the crime was punishable by imprisonment.").

Starside's extrinsic-defamation claim, based on Adams's statement in the March 18, 2015 email comparing Pourchot to Golgart, requires a different analysis. In *Brady v. Klentzman*, 515 S.W.3d 878, 886 n.4 (Tex. 2017), the supreme court defined "defamation per quod" as defamation that either (1) is not apparent but is proved by extrinsic evidence showing its injurious meaning or

–23–

(2) is apparent but not a statement that is actionable per se. The court concluded that "[a]bsent evidence of actual damages in a case of defamation *per quod*, judgment should be rendered for the defendant." *Id.* at 886. This Court, and several other courts of appeal, have also concluded that, if it is necessary to resort to innuendo or extrinsic evidence to determine the statement was defamatory, then the plaintiff is required to present evidence of injury and damages. *Main v. Royall*, 348 S.W.3d 381, 390 (Tex. App.—Dallas 2011, no pet.); *Barker v. Hurst*, No. 01-17-00838-CV, 2018 WL 3059795, at *8 (Tex. App.—Houston [1st Dist.] June 21, 2018, no pet.) (mem. op.); *Memon v. Shaikh*, 401 S.W.3d 407, 421 (Tex. App.—Houston [14th Dist. 2013, no. pet.), *judgment withdrawn*, 2014 WL 6679562, at *1 (Nov. 25, 2014) (per curiam); *Moore v. Waldrop*, 166 S.W.3d 380, 386 (Tex. App.—Waco 2005, no pet.).

The supreme court's definition of "defamation per quod" in *Brady* is consistent with its definition of "extrinsic defamation" in *Tatum*. Further, the issue of damages relating to extrinsic-defamation claims was not addressed by the supreme court in *Tatum*. Accordingly, *Tatum* did not impact existing case law requiring proof of actual damages in an extrinsic-defamation case. Because Starside pleaded an extrinsic-defamation claim based on Adams's statement comparing Pourchot to Golgart, it was required to present clear and specific evidence of actual harm and damages from the statement. Because it failed to do so, the trial court erred by failing to dismiss Starside's defamation claim based on that statement.

### Conclusion

Starside failed to produce clear and specific evidence as to each element of its prima facie case for defamation based on Adams's statement in the March 18, 2015 email comparing Pourchot to Golgart. Accordingly, the trial court erred by not granting Adams's supplemental motion to dismiss Starside's defamation claim based on that statement.

As to Starside's defamation claim based on the homepage of Adams's blog and the statements in the March 18, 2015 email that Starside failed to comply with City ordinances when removing trees from the common area, we conclude Starside pleaded and submitted evidence establishing the "when, where, and what was said," the defamatory nature of the statements, and that the statements were defamatory per se. *See In re Lipsky*, 460 S.W.3d at 591. Accordingly, Starside met its burden to establish by clear and specific evidence a prima facie case for each essential element of its defamation claim based on these statements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). The trial court, therefore, was required to deny Adams's supplemental motion to dismiss unless Adams met his burden of establishing by a preponderance of the evidence "each essential element of a valid defense to the nonmovant's claim." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d). Adams has neither alleged nor proved any such defense. Accordingly, the trial court properly denied Adams's supplemental motion to dismiss Starside's defamation claim based on those statements.

We affirm the trial court's denial of Adams's supplemental motion to dismiss Starside's defamation claim based on Adams's statements in the blog and in the March 18, 2015 email regarding Starside's removal of trees from the common area, but reverse the trial court's denial of Adams's supplemental motion to dismiss Starside's defamation claim based on Adams's statement in the March 18, 2015 email comparing Pourchot to Golgart. We remand this case to the trial court for further proceedings consistent with this opinion.

/Robert M. Fillmore/
ROBERT M. FILLMORE
151162F.P05                                  JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JOHN DAVID ADAMS, Appellant

No. 05-15-01162-CV          V.

STARSIDE CUSTOM BUILDERS, LLC, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas,
Trial Court Cause No. 416-01104-2015.
Opinion delivered by Justice Fillmore, Justices Stoddart and O'Neill participating.

In accordance with this Court's opinion of this date, the order of the trial court denying appellant John David Adams's motion to dismiss pursuant to the Texas Citizens Participation Act is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** that portion of the trial court's judgment denying appellant John David Adams's motion to dismiss appellee Starside Custom Builders, LLC's defamation claim based on the statement "the issues we had with Sandy Golgart have continued now that Phill is completely in control." In all other respects, the trial court's order is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 7th day of December, 2018.